1999 ND 119

**Barbara Ann NEFZGER, Plaintiff and Appellee,**

v.

**Jerry Jay NEFZGER, Defendant and Appellant.**

**No. 980318.**

Supreme Court of North Dakota.

June 23, 1999.

Wayne T. Anderson, Fargo, for plaintiff and appellee.

Maureen Holman, Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Jerry Jay Nefzger appealed from a divorce judgment, challenging the trial court's award of custody of his three minor children to their mother, Barbara Ann Nefzger, and an award to Barbara of $250 per month spousal support for five years. We conclude the trial court's findings on child custody and spousal support are not clearly erroneous. We affirm.

I

[¶ 2] Jerry and Barbara were married in 1978. The couple had three children born in 1981, 1988, and 1992. Jerry, age 42 at the time of trial, is a high school graduate who attended North Dakota State School of Science and Moorhead State University, but did not receive a degree. Jerry was employed at a liquor store for many years and is currently employed as an alarm system installer for a Fargo company, a position he has held since 1989. Barbara, age 41 at the time of trial, is a high school graduate who studied cosmetology. She was working as a hairdresser when the couple married, and currently owns her own salon in Fargo. Jerry's income has consistently been more than twice as much as Barbara's income.

[¶ 3] During the course of their marriage, Jerry and Barbara abused alcohol and marijuana and engaged in extramarital affairs. This resulted in a 10–month separation seven years into their 20–year marriage. After Barbara filed for divorce, she underwent an alcohol assessment and was given two alcohol abuse screening tests. Her score on one of the tests indicated alcohol abuse and her score on the other test did not indicate alcohol abuse. The evaluators' diagnostic impression was "[a]lcohol dependence with physiological dependence" and "[c]annabis abuse." Barbara went through an out-patient treatment program which she completed in October 1997, but did not continue with a recommended after-care program and be-

gan drinking again. Barbara denied having an alcohol problem, but testified she has not drunk alcohol since January 1, 1998. Barbara also reported to evaluators she smoked marijuana on average about once a week for the last 20 years and admitted keeping marijuana at her home and at the salon. Barbara testified she last smoked marijuana in July 1997.

[¶ 4] Jerry testified he did not drink as much alcohol or smoke as much marijuana as Barbara did, except for the last 18 months of their relationship when he tried drinking and smoking as much as Barbara in an effort to keep their marriage together. Jerry did not undergo an alcohol assessment and he continues to drink occasionally. Jerry testified he too quit smoking marijuana, the last time being when he was with Barbara.

[¶ 5] Jerry's employment caused him to be out of town often. Barbara was primarily responsible for taking care of the children and managing the home and family finances. She frequently took the children with her to work at her salon and cared for them during evenings and on Saturdays. Barbara's parents also provided day and evening care for the children. The children have done well in school, are engaged in extracurricular activities and are in good health. Barbara, however, had the parties' adolescent daughter undergo counseling to address conflict in their relationship. The middle child has difficulty with homework, but his parents assist him. Jerry and others testified Barbara's drinking, which generally occurred outside of the children's presence, did not affect her ability to care for the children.

[¶ 6] The guardian ad litem (GAL) conducted a custody study and recommended Jerry be awarded custody of the children. The GAL testified she was concerned about Barbara's "drug, alcohol consumption, her nightlife, some of the actual interaction between Barbara and the children, lack of patience, [and] verbal abuse." The GAL reported Barbara's personality and communication style is a "significant hindering factor to the development of a positive, nurturing relationship between her and the children, [the adolescent daughter] in particular." The GAL described Barbara's communication style as "verbally assaultive" and "very intimidating." The GAL described Jerry's communication style with the children as being "much more gentle and sensitive to the children's feelings and needs." The GAL reported "the children would thrive and flourish under the care of their father" who "has assumed a significant amount of responsibility and an active role in parenting the children." The GAL said "significant negating considerations" to awarding custody to Barbara were "the negative behaviors and resulting negative effects upon the children of Barbara's alcoholism, drug usage, personality issues, and sexual liaisons...." The GAL acknowledged Jerry smoked marijuana and "is reported to drink, but is generally regarded as being able to limit his intake, step back, and resume familial responsibilities when doing so."

[¶ 7] The trial court rejected the GAL's recommendation and awarded custody of the children to Barbara, concluding the recommendation "cannot be reconciled with the record." The court noted both parents engaged in extramarital affairs and used drugs and alcohol during the marriage, and both parties were "committed to modify their conduct for the sake of their children." The court noted the testimony of the witnesses, including Jerry, was that Barbara "was a good mother" and was the primary caregiver during the weeks Jerry was working out of town. The court also noted Barbara's job provides her with more flexibility for tending to the children's medical and school needs. The court noted the "strong emotional ties existing between both parents and the children," and granted Jerry liberal and extensive visitation rights. Further recognizing that Barbara "earns substantially less than Jerry," that the marriage was "long-term," and that the parties have "in-

sufficient assets to enable [them] to continue their present standard of living," the court awarded Barbara spousal support of $250 per month for five years. Jerry appealed.

## II

[¶ 8] Jerry contends the trial court erred in awarding Barbara custody of the children.

[¶ 9] A trial court's child-custody determinations are findings of fact subject to appellate review under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Goter v. Goter*, 1997 ND 28, ¶ 8, 559 N.W.2d 834. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Hill v. Weber*, 592 N.W.2d 585, 1999 ND 74, ¶ 12.

[¶ 10] A trial court has substantial discretion in custody matters, and must award custody based on its determination of the best interests and welfare of the child. *Hogue v. Hogue*, 1998 ND 26, ¶ 5, 574 N.W.2d 579. A reviewing court will not retry a custody case or substitute its judgment for that of the trial court, if the trial court's determination is supported by evidence in the record. *Schmidkunz v. Schmidkunz*, 529 N.W.2d 857, 859 (N.D. 1995).

[¶ 11] The factors for determining the best interests and welfare of the child set forth in N.D.C.C. § 14–09–06.2 are the paramount considerations in a child custody decision. *See Hogue*, 1998 ND 26, ¶ 6, 574 N.W.2d 579. Here, the trial court made specific findings under each factor, and noted many of the factors did not favor either party. The court found both parents provide the children with love and affection, there are strong emotional ties existing between both parents and the children, and both parents have the capacity to give the children love, affection and guidance, and to continue the children's education. The court likewise found both parents have shown a willingness and have the ability to provide for the children's material needs. The children stated no preference about which parent they lived with. The court found the children were doing well in school and both parents contributed to the children's academic success. The court noted Jerry had more involvement in the children's outside activities, however, primarily because of Barbara's evening work schedule.

## A

[¶ 12] Jerry argues the trial court improperly disregarded evidence of Barbara's alcohol dependence. The trial court noted Barbara had an alcohol evaluation which resulted in her enrolling in a treatment program, and that she continued to drink after completing the program. The court found:

Both parties enjoy good physical health. Barbara episodically drank to excess during the course of the marriage. Jerry testified "that he drank right along with her." Barbara is currently abstaining from alcohol and drug use. Jerry testified that he used drugs also but quit earlier than Barbara.

[¶ 13] A parent's inability to control alcoholism is a highly relevant factor a trial court can consider in child custody determinations. *See, e.g., Ramstad v. Biewer*, 1999 ND 23, ¶ 9, 589 N.W.2d 905; *Freed v. Freed*, 454 N.W.2d 516, 519 (N.D. 1990). However, we have not said alcoholism poses an absolute bar to a parent obtaining custody of a child regardless of the surrounding circumstances. In this case, several witnesses, including Jerry, testified Barbara's drinking did not interfere with her care of the children. Although the GAL reported Jerry and the adolescent daughter enabled Barbara's drinking by assuming some of her responsibilities and warned that Barbara's ability to care for the children could worsen

"[w]ithout the constraints of a marital relationship," the trial court weighed these concerns against other evidence in the record. The trial court essentially determined Barbara and Jerry's alcohol and marijuana usage were substantially equivalent, even though Jerry attempted to portray himself as a moderate drinker who only rarely smoked marijuana. More important, the trial court found Barbara had abstained from drinking alcohol for four and one-half months before the divorce hearing, but that Jerry continued to drink. The court specifically found both "parties appear committed to modify their conduct for the sake of their children." On this record, we cannot say the trial court was forbidden from awarding Barbara custody because of her problems with alcohol.

## B

[¶ 14] Jerry contends the trial court also disregarded evidence of Barbara's behavior that showed a lack of moral fitness. As we noted earlier, the trial court found both parties engaged in extramarital affairs and used drugs, but both were committed to modify their conduct for the children's sake. Jerry argues this finding is clearly erroneous because Barbara had "numerous" ongoing affairs and liaisons throughout the marriage, while his affairs were "very brief relationships," and because Barbara smoked more marijuana than he did and kept marijuana and paraphernalia at the family home and at the salon.

[¶ 15] There is evidence that Barbara had three affairs and Jerry had two affairs during this less than traditional marriage. We do not view Barbara's affairs as more "numerous" than Jerry's affairs. Most important, however, we have rejected the suggestion that evidence of extramarital relationships, per se, is an irrefutable indication of lack of moral fitness. See Schmaltz v. Schmaltz, 1998 ND 212, ¶ 8, 586 N.W.2d 852; Foreng v. Foreng, 509 N.W.2d 38, 40 (N.D.1993). Assuming Barbara's marijuana usage was in fact greater than Jerry's, Barbara testified

she had not smoked any marijuana since July 1997. The trial court could properly view Barbara's past marijuana usage as not being indicative of bad character which would adversely affect the children. See State ex rel. Melling v. Ness, 592 N.W.2d 565, 1999 ND 73, ¶ 19; Gould v. Miller, 488 N.W.2d 42, 44 (N.D.1992). The trial court did not err in refusing to find one of these parents more morally fit than the other.

## C

[¶ 16] The trial court found the children "have primarily up to this point been cared for by their mother" and "Jerry had a job which up until very recently required extended overnight absences for up to 2 week periods." Jerry contends the trial court erred in finding Barbara was the primary caretaker during the marriage.

[¶ 17] Although the primary caretaker rule has not been given presumptive status in this state, it remains a relevant factor to be considered by the trial court in its review of the statutory best interests factors under N.D.C.C. § 14–09–06.2. See Schneider v. Livingston, 543 N.W.2d 228, 230 (N.D.1996). Generally, the primary caretaker is the parent who provides the child with daily nurturance, care and support. See Reeves v. Chepulis, 1999 ND 63, ¶ 17, 591 N.W.2d 791.

[¶ 18] There is evidence that Jerry was substantially involved in the children's caregiving when he was home. The GAL noted "Jerry has participated in a significant amount of physical care taking of the children, and he spends a significant amount of quality time with them," and testified she believed Jerry spent more time with the children than Barbara. However, there is also evidence in the record supporting the trial court's finding Barbara provided the primary caregiving until Jerry's job duties changed. Barbara and others testified Barbara made health care appointments for the children, attend-

ed school conferences, arranged child care, and encouraged socializing with friends and family. Jerry, on the other hand, was out of town working for lengthy periods of time. The trial court's finding Barbara was the primary caretaker of the children during the marriage is not clearly erroneous.

### D

[¶ 19] Jerry also argues the trial court improperly disregarded the GAL's recommendation that he be awarded custody.

[¶ 20] The trial court, not the guardian ad litem, has the authority to make a child custody award. *See Green v. Green*, 1999 ND 86, ¶¶ 9–10, 593 N.W.2d 398. The weight assigned to a guardian ad litem's report or other independent recommendation is within the trial court's discretion, and the court does not have to, nor should it, regard a guardian ad litem's testimony and recommendation as conclusive. *See Schmaltz*, 1998 ND 212, ¶ 9, 586 N.W.2d 852; *Schneider*, 543 N.W.2d at 233. Here, the trial court noted the GAL's recommendation was based on her interviews with the parties, family members, and several others, and it could not reconcile the GAL's recommendation with the trial record. The GAL admitted her concerns about Barbara's alcohol consumption and her relationship with the children did not arise from firsthand observations, but from reports given to her by others. Some of those persons were Barbara's former disgruntled employees. The trial court is the ultimate judge of the credibility of witnesses. *See State v. Cox*, 325 N.W.2d 181, 183 (N.D.1982). The trial court considered the GAL's report and recommendation, but, based on the record, simply disagreed with it. Under the circumstances, we are not convinced the trial court abused its discretion in doing so.

[¶ 21] Upon our review of the record, we conclude the trial court's award of custody of the children to Barbara is not clearly erroneous.

### III

[¶ 22] Jerry contends the trial court erred in awarding Barbara spousal support of $250 per month for a period of five years.

[¶ 23] In determining spousal support, the trial court may consider the standard of living of the parties in a long-term marriage and the need to balance the burden created by the separation when it is impossible to maintain two households at the pre-divorce standard of living. *Donarski v. Donarski*, 1998 ND 128, ¶ 6, 581 N.W.2d 130. Rehabilitative spousal support, which the trial court appears to have awarded in this case, can be awarded not only to assist a disadvantaged spouse to achieve educational goals, but also to enable the disadvantaged spouse to achieve suitable and appropriate self support. *Gierke v. Gierke*, 1998 ND 100, ¶ 22, 578 N.W.2d 522. Spousal support is appropriate to allow a disadvantaged spouse to continue her accustomed standard of living. *Kautzman v. Kautzman*, 1998 ND 192, ¶ 20, 585 N.W.2d 561. Questions of property division and spousal support cannot be considered separately or in a vacuum, but must be examined and dealt with together, especially when there is a large difference in earning power between the spouses. *Fox v. Fox*, 1999 ND 68, ¶ 22, 592 N.W.2d 541. A trial court's decision on spousal support is treated as a finding of fact and will not be reversed unless it is clearly erroneous. *Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 13, 563 N.W.2d 377.

[¶ 24] The trial court divided the parties' marital property in roughly equal amounts, awarding Barbara a net distribution of $21,388 and awarding Jerry a net distribution of $15,857. The court also granted Jerry a $5,000 lien against the parties' residence. The trial court noted this was a long-term marriage, lasting almost 20 years, and found there were "insufficient assets to enable the parties to continue their present standard of living."

The evidence shows Jerry consistently earned more than twice as much as Barbara earned in her salon. Jerry's gross income in 1996 was $38,589. Barbara's highest gross income in recent years was approximately $14,000. The trial court was not required to accept Jerry's claim that Barbara underreported her income and used other income to purchase her salon. Barbara also relied on Jerry's medical insurance during the marriage. The trial court could find from this evidence that Barbara was disadvantaged by the divorce, and that temporary spousal support was necessary to more equitably balance the burden of divorce. *Compare Gregg v. Gregg*, 1998 ND 204, ¶¶ 20–23, 586 N.W.2d 312 (holding award of spousal support to wife was clearly erroneous where there was equal division of marital property and wife was not disadvantaged because her actual income and earning potential were equal to or greater than that of the husband).

[¶ 25] On this record, we cannot say the trial court's award to Barbara of $250 per month spousal support for five years is clearly erroneous.

IV

[¶ 26] The judgment is affirmed.

[¶ 27] VANDE WALLE, C.J., KAPSNER and SANDSTROM, JJ., and ZANE ANDERSON, D.J., concur.

[¶ 28] ZANE ANDERSON, D.J., sitting in place of MARING, J., disqualified.