2002 ND 66

**Kevin Gerald DesLAURIERS, Plaintiff, Appellant and Cross–Appellee,**

v.

**Sandra Jane DesLAURIERS, n/k/a Sandra Jane Wade, Defendant, Appellee and Cross–Appellant.**

**No. 20010145.**

Supreme Court of North Dakota.

April 16, 2002.

Richard B. Baer, Richard B. Baer, P.C., Bismarck, for plaintiff, appellant and cross-appellee.

Karen L. McBride, Bucklin, Klemin & McBride, Bismarck, for defendant, appellee and cross-appellant.

VANDE WALLE, Chief Justice.

[¶ 1]   Kevin DesLauriers appealed from a judgment awarding custody of the couple's two minor children to his former wife, and dividing the marital property.   Kevin contends the trial court failed to adequately consider the custody guidelines as set forth by Section 14–09–06.2(1) of the North Dakota Century Code and, therefore, the trial court's custody decision was clearly erroneous.   Further, Kevin contends the trial court's division of the marital debt and property was also clearly erroneous.   We disagree, and affirm the judgment.

[¶ 2]   On April 19, 2001 Kevin DesLauriers was granted a divorce from Sandra DesLauriers on the grounds of irreconcilable differences.   The marriage had lasted nearly eleven years and produced two children.   Before the divorce the couple had been separated for nearly a year.

[¶ 3]   Among other issues, the trial court resolved the dispute over the custody of the couple's two minor children.   The trial court awarded the primary physical custody of the children to Sandra.   In its judgment the trial court explained it reached its decision because Sandra had been the primary caretaker of the children, and because Sandra was "stable and in a positive job setting and relationship with her children."   Additionally, the trial court noted "I am adopting the report of the guardian ad litem, which is herewith incorporated by reference."   Without further discussion of the statutory factors, the trial court concluded "[b]ased on the foregoing, the Court is awarding the primary physical custody of the children to [Sandra]."

[¶ 4]   Further, the trial court ordered a property and debt division.   Kevin received net marital property worth approximately $13,560, and Sandra received net marital property of approximately $1,300.   The trial court explained this disparity of division by stating "[i]n view of the fact that a substantial amount of Kevin's equity is from the tools with which he is able to earn a living, the Court finds this to be an equitable distribution."

I

[¶ 5]   When a trial court is asked to determine which parent of a divorcing

or divorced couple should be awarded custody of the couple's minor children, the trial court must strive to serve the children's best interests. *Schmaltz v. Schmaltz*, 1998 ND 212, ¶ 6, 586 N.W.2d 852. To assist the trial court in this task, the legislature has set forth several factors which must be considered by the trial court as it forms its custody decision. These factors are set forth in N.D.C.C. § 14–09–06.2(1) and include:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence. . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

[¶ 6] A trial court is not required to make specific findings of fact for each of the above statutory factors, but the trial court should consider all relevant factors in making its custody decision. *Corbett v. Corbett*, 2001 ND 113, ¶ 6, 628 N.W.2d 312. Such a decision is a finding of fact which will not be reversed on appeal unless clearly erroneous. *Id.* "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made." *Id.* As we have explained:

We give due regard to the trial court's opportunity to assess the credibility and observe the demeanor of witnesses, and we do not retry custody issues or reassess the credibility of witnesses if the court's decision is supported by evidence in the record. We will not reverse a trial court's factual findings merely because we may have viewed the evidence differently, and a choice between two permissible views of the weight of the evidence is not clearly erroneous.

*Corbett v. Corbett*, 628 N.W.2d 312, 2001 ND 113, ¶ 6 (citations omitted).

[¶ 7] The trial court considered the best interests of Kevin's and Sandra's children under the statutory provisions of N.D.C.C. § 14–09–06.2(1), and awarded the primary physical custody of the two minor children to Sandra. In its judgment the trial court explained it reached its decision because Sandra had been the primary caretaker of the children, and because Sandra was "stable and in a positive job setting and relationship with her children."

[¶ 8] "Although the primary caretaker rule has not been given presumptive status in this state, it remains a relevant factor to be considered by the trial court in its review of the statutory factors under N.D.C.C. § 14–09–06.2." *Reeves v. Chepulis,* 1999 ND 63, ¶ 17, 591 N.W.2d 791. This is true because even though N.D.C.C. § 14–09–06.2(1) does not enumerate a primary caretaker factor, the rule nonetheless is inherent within the statutory factors. *Id.* (citing *Gravning v. Gravning,* 389 N.W.2d 621, 622 (N.D.1986) which explained the primary caretaker rule "inheres in the statutory factors and has not yet been accorded elevated status"). Accordingly, the trial court's reliance upon Sandra's role as primary caretaker is clearly erroneous only if there is no evidence of Sandra playing such a role.

[¶ 9] The record contains evidence to support the assertion Sandra was the primary caretaker. Both parties testified at trial, each claiming he or she was the primary care giver. The trial court is in a better position to judge the credibility of witnesses than this Court, so we will not now re-weigh or reconsider the trial testimony of each party.

[¶ 10] In addition to relying upon its conclusion that Sandra was the primary caretaker, the trial court adopted the guardian ad litem's report. Kevin contends doing so resulted in the trial court's failure to fulfill its obligation to consider the factors of N.D.C.C. § 14–09–06.2(1). We disagree.

[¶ 11] Though "[t]he trial court, not the guardian ad litem, has the authority to make a child custody award," *Nefzger v. Nefzger,* 1999 ND 119, ¶ 20, 595 N.W.2d 583, "[t]he weight assigned to a guardian ad litem's report or other independent recommendation is within the trial court's discretion." *Id.* A trial court, however, should not "regard a guardian ad litem's testimony and recommendation as conclusive." *Id.* Accordingly, it is not reversible error for a trial court to rely upon a guardian ad litem's findings, and even to incorporate them wholly by reference into the court's findings, although this is not the preferred approach, so long as the trial court does not abdicate its obligation to independently weigh the evidence. Indeed, experts are retained to provide just such assistance to the courts.

[¶ 12] The guardian ad litem's report included detailed findings and a discussion of every one of the thirteen factors set forth in N.D.C.C. § 14–09–06.2(1). The guardian ad litem concluded seven of the statutory factors favored neither of the parents, and the remaining five factors all favored Sandra. Kevin asserts the guardian ad litem's conclusions and discussion were mistaken and, therefore, cannot support the trial court's judgment. We decline Kevin's invitation to re-weigh the evidence of this case. Two of the guardian ad litem's findings, however, require further discussion.

[¶ 13] First, the guardian ad litem found that the "reasonable preference" of the children was to live with Sandra and therefore concluded this factor, N.D.C.C. § 14–09–06.2(1)(i), favored Sandra. Kevin protests that the children, born October 3, 1990 and March 26, 1992

respectively, were simply too young at the time of trial, December of 2000, to have a legally significant opinion on the subject. Sandra correctly points out, however, that while a trial court has no obligation to consider the preference of an immature child, *see* N.D.C.C. § 14–09–06.2(1)(i), the trial court may determine whether or not a child is capable of intelligently choosing between parents. *McDowell v. McDowell,* 2001 ND 176, ¶ 20, 635 N.W.2d 139. Because the trial court adopted the guardian ad litem's report and thus found the reasonable preference of the children was to live with Sandra, the trial court implicitly determined the children were capable of intelligently choosing between Kevin and Sandra. This was not clearly erroneous.

■■■ [¶ 14] Second, the guardian ad litem found evidence of domestic violence by Kevin and therefore concluded this factor, N.D.C.C. § 14–09–06.2(1)(j), favored Sandra. Kevin argues the guardian ad litem found domestic violence where there was none. The term "domestic violence," as defined by N.D.C.C. § 14–07.1–01(2), includes "physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members." If there is credible evidence of any of the above a trial court shall consider it and weigh it against the perpetrator of the abuse. *Holtz v. Holtz,* 1999 ND 105, ¶ 27, 595 N.W.2d 1. If there is credible evidence of domestic violence "and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding," *id.* (quoting 1997 N.D. Sess. Laws ch. 147, § 2), a rebuttable presump-

tion against awarding custody to the parent who perpetrated the domestic violence is created.

[¶ 15] Sandra concedes Kevin's behavior does not create the statutory presumption against awarding him custody; however, Sandra maintains Kevin's behavior was, nonetheless, abusive and appropriately weighed against him as one factor among others.

[¶ 16] The guardian ad litem noted:

Sandi feels Kevin was verbally abusive to her and the children. She said he became abusive in what he called joking around with her and the children. Sandi said if he were joking around the children wouldn't have been crying. Sandi feels Kevin used degrading names to the children and that he had a temper. The sexual aspect of their marriage was another source of problems according to Sandi.

The guardian ad litem further reported:

According to the Domestic Abuse Intervention Project, the characteristics of emotional abuse include putting her down, making her feel bad about herself, calling her names, making her think she is crazy, playing mind games, humiliating her and making her feel guilty. *If we include the mental anguish portion of the domestic violence definition then I believe domestic violence was present* (emphasis ours).

The guardian ad litem concluded this factor favored Sandra, but, there is no evidence that the guardian ad litem considered the mental anguish sufficient to trigger the statutory presumption against Kevin as a domestic abuser.

■■■ [¶ 17] Other than the fear specifically defined at N.D.C.C. § 14–07.1–01(2), mental anguish is not within the statutory definition of domestic violence, and it is not part of the calculus of N.D.C.C. § 14–09–

06.2(1)(j). The last factor of N.D.C.C. § 14–09–06.2(1), factor (m), however, allows a trial court to consider any relevant information not covered by a specific factor of N.D.C.C. § 14–09–06.2(1). The deliberate infliction of mental anguish upon one parent and the children by the other parent is relevant to the custody determination and may be considered under the last factor, the catch-all factor, of N.D.C.C. § 14–09–06.2(1).

[¶ 18]   The custody decision is affirmed.

## II

[¶ 19]   Kevin further asserts the trial court's division of property was inequitable and clearly erroneous because, despite the fact it left him with more marital property than Sandra, he was also charged with paying, what he considers to be, Sandra's credit card debt.

[¶ 20]   A trial court's decision on the division of marital property is a finding of fact, and therefore such decisions will not be set aside unless they are clearly erroneous. *Schwartz v. Schwartz*, 1997 ND 91, ¶ 4, 563 N.W.2d 391(reminding also "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses"). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence there is a definite and firm conviction a mistake has been made." *Fox v. Fox*, 2001 ND 88, ¶ 14, 626 N.W.2d 660.

[¶ 21]   In the past we have found where one spouse has amassed credit card debt for his or her own "personal benefit and to pay court-ordered support to a separated spouse, that debt should not be shifted to the supported spouse." *Lohstreter v. Lohstreter*, 1998 ND 7, ¶ 21, 574 N.W.2d 790.   In contrast, here there is

evidence Kevin and Sandra both used credit cards to directly or indirectly benefit the entire family, even though one of the credit cards was solely in Sandra's name. The debt produced by using credit cards to benefit the entire family is, like property, neither uniquely the husband's nor the wife's and can be allocated by the trial court in its equitable division of the marital estate. *See Lohstreter v. Lohstreter*, 574 N.W.2d 790, 1998 ND 7, ¶ 17 (reversing a trial court's allocation of credit card debt to both spouses because the record did not support the trial court's assumption the credit card debt "inured to the benefit of the entire family").   In order to divide the net marital estate between the parties, the trial court must also allocate the debt. *See, e.g., Corbett v. Corbett*, 628 N.W.2d 312, 2001 ND 113, ¶¶ 14–15(affirming a trial court's division of property and debt); *Schmaltz v. Schmaltz*, 586 N.W.2d 852, 1998 ND 212, ¶¶ 16–17(affirming a trial court's division of marital property and debt); *Schwartz v. Schwartz*, 563 N.W.2d 391, 1997 ND 91, ¶¶ 6–7(affirming a trial court's division of property and debt).

[¶ 22]   A trial court's division of marital property must be equitable. N.D.C.C. § 14–05–24(1). "[A] property division need not be equal to be equitable," however. *Schwartz v. Schwartz*, 563 N.W.2d 391, 1997 ND 91, ¶ 4. If the property division is not equal and there is a "substantial disparity" in the property division, the trial court must explain the reasons for the disparity. *See id.*

[¶ 23]   Here the trial court calculated the value of the marital assets and debts and awarded Kevin marital property with a net value of approximately $13,560, and Sandra net marital property of approximately $1,300. The trial court explained this disparity of division by stating "[i]n view of the fact that a substantial amount

of Kevin's equity is from the tools with which he is able to earn a living, the Court finds this to be an equitable distribution." There is evidence in the record to support the trial court's findings, and therefore, the property division is not clearly erroneous.

[¶ 24]   The judgment is affirmed.

[¶ 25] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, JJ., concur.

I concur in the result, DALE V. SANDSTROM.