2003 ND 29

**Justin NEIDVIECKY, Plaintiff and Appellant,**

v.

**Tina (Blawat) NEIDVIECKY, Defendant and Appellee.**

No. 20020176.

Supreme Court of North Dakota.

March 5, 2003.

Sharon W. Martens, Hodny Currie Lawyers, Grafton, N.D., for plaintiff and appellant.

Lawrence D. DuBois, Fleming & DuBois, Cavalier, N.D., for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Justin Neidviecky appealed from a divorce judgment awarding custody of the parties' minor child to Tina Neidviecky and allocating the marital debt between the parties. We affirm the award of custody but we reverse the allocation of marital debt and remand for the trial court to reconsider that issue.

[¶ 2] Justin and Tina Neidviecky were married November 20, 1998. Their daughter, Cassidy, was born in 1999. After Cassidy's birth, Tina remained at home to care for her, but Tina is currently employed outside the home with Friendship, Inc., working with mentally handicapped individuals. During the marriage Justin worked at various jobs as an electrician, which required the parties to travel and live in several states. Although Justin has received training as an electrician, he needs to complete two tests before he can operate his own electrician business. He is currently employed by the Home Shop as a salesperson.

[¶ 3] While the family was living in Albuquerque, New Mexico they returned to North Dakota for the Christmas holiday. During that time Tina took Cassidy to visit Tina's parents in Drayton and while there she informed Justin she was not returning to New Mexico. The parties separated after 25 months of marriage. On September 14, 2001 Justin filed a complaint seeking a divorce and custody of their child. Tina counterclaimed, also seeking a divorce and custody of Cassidy. After a bench trial, the court granted the parties a divorce on the grounds of irreconcilable differences, awarded custody of Cassidy to Tina with liberal visitation for Justin, and allocated the marital debt between the parties. Justin appealed, challenging the custody award and the debt allocation.

I

[¶ 4] Justin asserts the trial court erred in awarding Tina custody of Cassidy. In making an initial custody award, a trial court must determine the best interests and welfare of the child, considering the factors listed in N.D.C.C. § 14–09–06.2(1), which provides in part:

1. For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

    a. The love, affection, and other emotional ties existing between the parents and child.

    b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

    c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence....

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests....

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

A separate finding is not required for each factor, but the court's findings should be stated with sufficient specificity to enable a reviewing court to understand the factual basis for the trial court's decision. *Dufner v. Dufner*, 2002 ND 47, ¶ 17, 640 N.W.2d 694. We exercise a limited review of a child custody award in divorce cases, and the trial court's custody determination is a finding of fact that will not be set aside on appeal unless it is clearly erroneous. *Stoppler v. Stoppler*, 2001 ND 148, ¶ 7, 633 N.W.2d 142. A finding of fact is clearly erroneous only if it is induced by an erro-neous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. *Kjelland v. Kjelland*, 2000 ND 86, ¶ 8, 609 N.W.2d 100.

[¶ 5] A review of the trial court's findings on the custody issue reveals the court conscientiously considered the factors under N.D.C.C. § 14–09–06.2(1). The court found that both Justin and Tina have a strong love for Cassidy and both have the capacity and disposition to provide her with material needs and to give her love, affection, guidance, and to continue her education. The court found the factor of continuity weighed in favor of Tina being the custodial parent, because Cassidy has been in Tina's primary care all of her life with the exception of temporary visitation periods with Justin and his family. Although the primary caretaker of a child does not enjoy a paramount or presumptive status for receiving custody, it is a relevant factor to be considered by the trial court. *DesLauriers v. DesLauriers*, 2002 ND 66, ¶ 8, 642 N.W.2d 892.

[¶ 6] Justin contends the trial court did not sufficiently weigh Tina's infidelity in deciding the custody issue. In deciding custody, it is appropriate for the trial court to consider the circumstances of a parties' marital infidelity and weigh it according to its effect upon the child. *See Gregg v. Gregg*, 1998 ND 204, ¶ 10, 586 N.W.2d 312. The trial court found Tina had a single sexual encounter with another man during the marriage and, after the couple separated, Tina commenced living with a man. However, the court also found there was no evidence that Tina's infidelities affected her ability to parent her daughter.

[¶ 7] Relative to the custody issue, the trial court found that Justin has a negative view of Tina and does not seem to be able to look at their situation in an open

and objective manner. The court found Tina, as the custodial parent, is more likely to facilitate a continuing relationship between Cassidy and her father:

[W]e have two people who are good people who perhaps married too young, had a child right away and did not hold up well under the pressure and as a result did not treat each other very well. These combined choices and actions led to the end of this marriage.

I conclude that this factor [N.D.C.C. § 14–09–06.2(1)(b) ] weighs slightly in Tina's favor because she demonstrates a more positive attitude towards Justin. She described him as a good father and seems able to separate the fact he may have treated her badly at times from his ability to parent their child. Tina therefore is better able to provide guidance and an environment free from criticism and negativity about Cassidy's father, Justin.

This is a valid consideration by the trial court. Visitation between a child and a noncustodial parent is presumed to be in the best interests of the child. *See Hurt v. Hurt,* 2001 ND 13, ¶ 14, 621 N.W.2d 326.

■ [¶ 8] We conclude the trial court gave appropriate consideration to all of the relevant factors in deciding the custody issue. A trial court has a difficult choice to make in deciding custody between two fit parents, and this Court will not retry the case or substitute its judgment for the trial court's, if that Court's determination is supported by the record evidence. *McDowell v. McDowell,* 2001 ND 176, ¶ 23, 635 N.W.2d 139. Considering the evidence in a light most favorable to the trial court's findings of fact, which are presumed correct, we conclude the trial court's custody decision is not clearly erroneous.

## II

■ [¶ 9] Justin asserts the trial court erred in allocating the marital debt between the parties. The parties owned a small amount of personal property which they divided between themselves by stipulation, and they submitted their debt for the court to allocate between them. The trial court found the parties had total outstanding debt of $17,078. The court allocated $12,940 of the debt to Justin and $4,138 of the debt to Tina. Of the total amount of outstanding debt, the court found $2,940 was owed to Justin's parents, Albert and Linda Neidviecky. Justin contends the court erred in not including as marital debt the sum of $14,800 owed to Justin's parents. Justin also contends the trial court did not equitably allocate the debt between the parties.

■ [¶ 10] When a divorce is granted, the trial court "shall make an equitable distribution of the property and debts of the parties." N.D.C.C. § 14–05–24(1). All of the parties' assets, regardless of the source, must be considered to ensure an equitable distribution of the marital property. *Heinz v. Heinz,* 2001 ND 147, ¶ 5, 632 N.W.2d 443. We have consistently held that property acquired before marriage must be included in the marital estate. *Grinaker v. Grinaker,* 553 N.W.2d 204, 208 (N.D.1996). In order to divide the net marital estate between the parties, the trial court must also allocate the debt. *DesLauriers,* 2002 ND 66, ¶ 21, 642 N.W.2d 892. Only after all assets and debts are included in the marital estate can a trial court apply the Ruff–Fischer guidelines and consider the source of the property in making an equitable distribution. *See Barth v. Barth,* 1999 ND 91, ¶ 8, 593 N.W.2d 359; *see also Fischer v. Fischer,* 139 N.W.2d 845, 847 (N.D.1966) and *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107, 108 (1952).

[¶ 11] The trial court determined the total marital debt was $17,078. In allocat-

ing the debt between the parties the trial court properly considered their circumstances and other relevant factors:

> Division of debt must be equitable or fair. Justin has a monthly income of $1215.00[.] Tina has a current gross monthly income of $603.00. Justin has been trained as an electrician. If he writes and passes two tests he will be in a position to open his own business as an electrician. Tina does not have the same earning ability as Justin. The $10000.00 debt to SBA is a debt to repair a Four plex apartment that Justin owned. He had made plans to purchase this prior to the marriage.

> Considering those factors as well as the factor of debts of the marriage paid by Justin during the one year separation the Court divides the marital debt.

There is no apparent error in this part of the debt allocation process by the court. However, in finding the total marital debt was $17,078 the trial court only considered $4,700 as marital debt out of a total claimed loan of $14,800 from Justin's parents. In refusing to include as marital debt a substantial portion of this claimed loan, the trial court explained:

> Justin claimed a total loan of $14800.00 however based on Exhibit # 6 a total of $4700 was borrowed during the marriage and payments of $1760 were made during the marriage. The balance is $2940.00[.] *All other loan amounts were prior to the marriage or after the parties separated.*

[Emphasis added.] The trial court did not make a finding that any part of this claimed loan was in fact a gift, or otherwise not a valid debt. The trial court's statement demonstrates it would not consider as part of the marital debt any loan amounts incurred prior to the marriage or after the parties separated. We conclude this is an erroneous view of the law. Prior to dividing the marital estate, the trial court must determine the net marital worth by considering all property and debt accumulated by the parties. *See Barth,* 1999 ND 91, ¶ 8, 593 N.W.2d 359. In making an equitable distribution, justice requires use of the elementary accounting equation of assets minus liabilities to determine the net worth of the marital property. *Emter v. Emter,* 1999 ND 102, ¶ 6, 595 N.W.2d 16. Once all property and debts of the parties are included, a trial court may consider which of the parties has incurred particular debts, and the purposes for which those debts were incurred, in determining an equitable allocation of the responsibility for repayment. *Des-Lauriers,* 2002 ND 66, ¶ 21, 642 N.W.2d 892.

[¶ 12] In *Anderson v. Anderson,* 368 N.W.2d 566, 569 (N.D.1985), we held the trial court's division of property was induced by an erroneous view of the law and, therefore, was clearly erroneous, because the trial court did not include farmland and mineral interests inherited by the husband as part of the marital estate. Similarly, in *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 622 (N.D.1994), this Court held the trial court committed clear error when it treated gifted property received by the divorcing parties as separate property and excluded the value of the gifts from the marital estate. In both *Gaulrapp* and *Anderson* this Court held the parties were entitled to a division of their property under a correct application of the law by the trial court, and we reversed and remanded those cases to the trial court for reconsideration of the property division issue.

[¶ 13] We cannot be sure the trial court would have reached the same result in allocating the debt had it correctly included all legitimate debt as part of the marital estate prior to allocating the debt between the parties. A finding of fact is

clearly erroneous if it is induced by an erroneous view of the law. *Marschner v. Marschner*, 2002 ND 67, ¶ 4, 642 N.W.2d 857. Because the trial court did not apply the proper law in determining the marital estate, we cannot conclude the court's allocation of the debt is affirmable. We, therefore, reverse and remand for reconsideration of the debt allocation.

[¶ 14] The district court judgment is affirmed in part, reversed in part, and remanded.

[¶ 15] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

I concur in the result.

DALE V. SANDSTROM.