2015 ND 13

**Darlene MERTZ, Plaintiff and Appellee**

v.

**Mervyn MERTZ, Defendant and Appellant.**

**No. 20140072.**

Supreme Court of North Dakota.

Jan. 15, 2015.

Kent M. Morrow, Bismarck, ND, for plaintiff and appellee.

Brenda A. Neubauer, Bismarck, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1]   Mervyn Mertz appeals from a district court divorce judgment distributing marital assets and debts and ordering him to pay spousal support.  He argues the district court erroneously awarded permanent spousal support and the district court's division of assets and debts is clearly erroneous.  We reverse and remand for reconsideration of spousal support and property distribution.

I

[¶ 2]   Mervyn Mertz and Darlene Mertz were married in 1996.  They were married 17 years but had a relationship for over 30 years.  When the couple started dating, Darlene Mertz had two young children, whom Mervyn Mertz helped raise.  In 1980, the parties had a son together.  All the children are now above the age of majority.  Darlene Mertz was 57 years old at the time of trial and works as a public school instructional aid.  Mervyn Mertz was 60 years old at the time of trial and was an ironworker, but now is disabled.  Both parties have several health problems.

[¶ 3] The district court granted a divorce and awarded Darlene Mertz spousal support of $900 per month until she dies or remarries and divided the marital property. Darlene Mertz was awarded retirement funds, a vehicle and personal property, with a combined value of $76,045. She was responsible for $1,700 in marital debt, resulting in a property award with a net value of $74,345. The district court awarded Mervyn Mertz the marital home, retirement funds, vehicles and personal property, with a combined value of $272,700. He was responsible for $47,465 in marital debt, resulting in a property award with a net value of $225,235. The court ordered Mervyn Mertz to pay $75,000 to Darlene Mertz to equalize the disparity in the value of property awards.

## II

[¶ 4] A district court's "decision on spousal support is treated as a finding of fact and is subject to the clearly erroneous standard [under] N.D.R.Civ.P. 52(a)." *Fox v. Fox*, 1999 ND 68, ¶ 22, 592 N.W.2d 541. A district court's "division of marital property is . . . reversible on appeal only if clearly erroneous." *Brandner v. Brandner*, 2005 ND 111, ¶ 8, 698 N.W.2d 259. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made." *Id.*

## III

[¶ 5] Mervyn Mertz argues Darlene Mertz failed to request spousal support in her initial complaint; instead, the complaint stated, "[N]either party shall make alimony or spousal support payments." In Darlene Mertz's application for interim order, she requested spousal support. Mervyn Mertz argues he objected to the district court's consideration of spousal support at the interim hearing and reminded the court Darlene Mertz failed to amend her pleading. Mervyn Mertz argues the district court erred in awarding Darlene Mertz spousal support because Darlene Mertz failed to properly plead or amend her complaint.

[¶ 6] "An issue which is not properly raised in the pleadings but is tried by the express or implied consent of the parties will be treated in all respects as having been raised in the pleadings." *Schumacher v. Schumacher*, 1999 ND 149, ¶ 25, 598 N.W.2d 131. "Under Rule 15(b), N.D.R.Civ.P., a pleading may be amended impliedly, by the introduction of evidence which varies the theory of the case and which is not objected to by the opposing party." *Schumacher*, at ¶ 25. "Implied consent is established where the parties recognized that the issue entered the case at trial and acquiesced in the introduction of evidence on that issue." *Napoleon Livestock Auction, Inc. v. Rohrich*, 406 N.W.2d 346, 357 (N.D.1987). "[W]hether the issue was tried by express or implied consent is a matter within the sound discretion of the trial court and will not be reversed on appeal unless an abuse of discretion is shown." *Id.* Rule 15 "does not permit amendment to include collateral issues which may find only incidental support in the record." *Rohrich*, at 357.

[¶ 7] Spousal support was requested and granted in proceedings on the interim order. Mervyn Mertz had notice of it. At trial he cross-examined Darlene Mertz regarding her need for spousal support and did not object to questions on direct examination regarding the issue. Therefore, spousal support was tried by the implied consent of the parties.

## IV

[¶ 8] Mervyn Mertz argues the district court's award of spousal support is clearly erroneous. He argues the district court erroneously found Darlene Mertz to be economically disadvantaged, and nothing more. Mervyn Mertz argues he is unable to pay the debts awarded to him, his living expenses, the $75,000 cash payment, spousal support arrears and his $900 monthly spousal support obligation. The district court must consider the "supporting spouse's needs and ability to pay as well as the receiving spouse's income and needs." *Gustafson v. Gustafson,* 2008 ND 233, ¶ 6, 758 N.W.2d 895.

[¶ 9] The district court "may require one party to pay spousal support to the other party for any period of time." N.D.C.C. § 14–05–24.1. "[O]ur Court has recognized permanent spousal support as an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living." *Sommer v. Sommer,* 2001 ND 191, ¶ 14, 636 N.W.2d 423. "A district court may award permanent spousal support 'when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development she lost during the course of the marriage.'" *Gustafson,* 2008 ND 233, ¶ 6, 758 N.W.2d 895 (quoting *Wagner v. Wagner,* 2007 ND 33, ¶ 8, 728 N.W.2d 318). "A disadvantaged spouse is one who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity." *Sommer,* at ¶ 10 (citations and quotation marks omitted). This Court has "dispose[d] of the 'disadvantaged spouse' doctrine and reemphasize[d] the importance of a comprehensive analysis under the *Ruff–Fischer* guidelines." *Sack v. Sack,* 2006 ND 57, ¶ 12, 711 N.W.2d 157;

*Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966).

[¶ 10] "The district court must consider all the relevant factors under the *Ruff–Fischer* guidelines in determining spousal support." *Gustafson,* 2008 ND 233, ¶ 6, 758 N.W.2d 895. Under the *Ruff–Fischer* guidelines, the court considers:

"[T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material."

*Weigel v. Weigel,* 2000 ND 16, ¶ 6, 604 N.W.2d 462. "The court is not required to make a finding on each factor, but it must explain its rationale for its determination." *Becker v. Becker,* 2011 ND 107, ¶ 28, 799 N.W.2d 53 (citation and quotation marks omitted). The district court must consider the "supporting spouse's needs and ability to pay as well as the receiving spouse's income and needs." *Gustafson,* at ¶ 6. "The district court must adequately explain the basis for its decision, but we will not reverse a district court's decision when valid reasons are fairly discernable, either by deduction or by inference." *Lorenz v. Lorenz,* 2007 ND 49, ¶ 9, 729 N.W.2d 692 (citations and quotation marks omitted).

[¶ 11] At trial, Darlene Mertz requested $500 spousal support per month. The district court found Darlene Mertz is a disadvantaged spouse, explaining, "Throughout the marriage, she has earned a fraction of what Mervyn earned. Mervyn contributed to the household expenses,

but he spent his money as he wanted to spend it. The assets held in his name are significantly more valuable than the assets that Darlene has had." The district court awarded Darlene Mertz $900 per month in permanent spousal support, which is outside the range of evidence presented and the needs of Darlene Mertz. *See Lynnes v. Lynnes,* 2008 ND 71, ¶ 16, 747 N.W.2d 93 ("When the district court's valuation is within the range of evidence provided by the parties, the district court's valuation will not be set aside, unless this Court has a definite and firm conviction a mistake has been made."); *Gustafson,* 2008 ND 233, ¶ 6, 758 N.W.2d 895 (explaining the district court must consider the "supporting spouse's needs and ability to pay as well as the receiving spouse's income and needs").

[¶ 12] We "dispose[d] of the 'disadvantaged spouse' doctrine and reemphasize[d] the importance of a comprehensive analysis under the *Ruff–Fischer* guidelines." *Sack,* 2006 ND 57, ¶ 12, 711 N.W.2d 157. The district court only found that Darlene Mertz is a disadvantaged spouse, without analysis under the *Ruff–Fischer* guidelines. The court also awarded spousal support in excess of the amount requested. The district court's findings are inadequate and it misapplied the law.

[¶ 13] Moreover, a basis for the district court's findings cannot fairly be discerned. The district court found Mervyn Mertz's income is $3,849 per month and his monthly expenses, including paying the marital obligations, are $3,391. The district court found Darlene Mertz's monthly income is $1,400 and her monthly expenses are $1,000. The district court also ordered Mervyn Mertz to make a $75,000 cash payment to Darlene Mertz, payable within sixty days of the judgment. Mervyn Mertz argues he does not have the ability to pay spousal support in the amount of $900 per month. The district court must consider the "supporting spouse's needs and ability to pay as well as the receiving spouse's income and needs." *Gustafson,* 2008 ND 233, ¶ 6, 758 N.W.2d 895. Based upon the district court's findings, Mervyn Mertz does not have the ability to pay $900 spousal support per month. The district court's award of spousal support must be reversed and remanded for further proceedings.

V

[¶ 14] Mervyn Mertz argues the district court's division of marital property and debts is clearly erroneous. He argues the district court failed to assign reasonable values to the property and debts of the parties, resulting in a grossly inequitable distribution in Darlene Mertz's favor. Darlene Mertz argues the distribution was equitable. Section 14–05–24(1), N.D.C.C., requires the court to make "an equitable distribution of the property and debts of the parties." "The ultimate objective is to make an equitable division of the property. There are no set rules for the distribution of the martial estate and what is equitable depends upon the circumstances of the particular case." *Blowers v. Blowers,* 377 N.W.2d 127, 129 (N.D.1985) (citations omitted). "It is well-settled in our case law a property division does not need to be equal to be equitable, but a substantial disparity must be explained." *Young v. Young,* 1998 ND 83, ¶ 11, 578 N.W.2d 111.

[¶ 15] "All of the marital assets and debts must be included for the court to distribute the marital assets under the *Ruff-Fischer* guidelines." *Brandner,* 2005 ND 111, ¶ 6, 698 N.W.2d 259. "We have never said that the trial court must make an express finding as to each of the factors enumerated by the guidelines. Instead, we have said that the guidelines are solely an aid to the equitable division of

marital property." *Fraase v. Fraase*, 315 N.W.2d 271, 274 (N.D.1982). "The district court must adequately explain the basis for its decision, but we will not reverse a district court's decision when valid reasons are fairly discernable, either by deduction or by inference." *Lorenz*, 2007 ND 49, ¶ 9, 729 N.W.2d 692 (citations and quotation marks omitted).

## A

[¶ 16] Mervyn Mertz argues he should have been awarded a greater distribution of the marital estate based on the property he brought into the marriage. He argues the district court erroneously awarded Darlene Mertz the increase in value of his home from the date of purchase through the date of trial instead of from the date of marriage, nearly ten years later, to the date of trial.

[¶ 17] "The fact that property subject to distribution was acquired by one of the parties prior to the marriage is a consideration weighing in favor of that party." *Fraase*, 315 N.W.2d at 274. "Although we have recognized that the time of the acquisition of property and its source is significant, we have nevertheless held that property acquired prior to the marriage by one spouse should be considered as part of the marital estate in determining what an equitable division would be." *Id.* "We have stated that all property, regardless of source, is to be considered marital property." *Ulsaker v. White*, 2006 ND 133, ¶ 12, 717 N.W.2d 567. "We have consistently held that property acquired before marriage must be included in the marital estate." *Neidviecky v. Neidviecky*, 2003 ND 29, ¶ 10, 657 N.W.2d 255. The district court's distribution of the marital property was not clearly erroneous by not awarding Mervyn Mertz a greater distribution of the marital estate based on the property he brought into the marriage.

[¶ 18] Mervyn Mertz also argues the district court erred in determining the value of the home. The district court found:

> "[T]he original loan of $46,900 was paid off during the marriage, on July 1, 2002.
>
> "[A] copy of a 2009 appraisal valu[ed] the home at $150,000. The value of homes in Bismarck has increased since 2009. The Court finds the home has a present market value of $165,000.
>
> "The value of the home has increased during the course of the marriage. The amount of increase becomes marital property to be divided. The home has increased in value since the date of the marriage by $117,000."

"The district court's valuation of property is a finding of fact, which is presumptively correct and will not be reversed on appeal unless it is clearly erroneous." *Gustafson*, 2008 ND 233, ¶ 11, 758 N.W.2d 895.

[¶ 19] "Rule 8.3(a) of the North Dakota Rules of Court requires the parties to prepare a 'preliminary property and debt listing,' without indicating such listing would be binding, thus allowing the court to make its own findings of fact." *Gustafson*, 2008 ND 233, ¶ 11, 758 N.W.2d 895. On the 8.3 Property and Debt Listing, Mervyn Mertz valued the home at $150,000 and Darlene Mertz valued the home at $300,000. At trial, Mervyn Mertz testified the home needed substantial repairs. "An owner of real property may testify as to the value of the land without any further qualification or special knowledge." *Eberle v. Eberle*, 2010 ND 107, ¶ 17, 783 N.W.2d 254.

[¶ 20] The district court is in a superior position than this Court to determine property values because the district court can assess the credibility of the witnesses and evidence available. *Eberle*, 2010 ND 107, ¶ 17, 783 N.W.2d 254. "If

the district court's valuation is within the range of the evidence presented, its valuation of marital property is not clearly erroneous." *Gustafson*, 2008 ND 233, ¶ 11, 758 N.W.2d 895; *see also Datz v. Dosch*, 2013 ND 148, ¶ 22, 836 N.W.2d 598 (upholding the district court's valuation of real estate property, which is within range of the evidence when the parties' valuations of the property differ greatly). The district court's valuation of $165,000 is within the range of the evidence presented. The district court's valuation of the marital estate is not clearly erroneous.

[¶ 21] Mervyn Mertz argues the district court erred in its distribution of his Iron Worker's Annuity. "Retirement benefits are marital property that must be included in the marital estate and are subject to equitable distribution." *Lorenz*, 2007 ND 49, ¶ 19, 729 N.W.2d 692. During closing arguments, the district court specifically asked Mervyn Mertz's attorney how to distribute the annuity. Mervyn Mertz's counsel responded: "The date of the marriage, Your Honor, versus the years of employment. He testified he had been an iron worker for 30–some years. So it would be about 25 percent." The district court awarded Darlene Mertz her retirement accounts "plus a share of Mervyn's Farmer's Financial Solutions/Ironworkers Annuity based upon the formula set forth in *Bullock v. Bullock*, 354 N.W.2d 904 (N.D.1984). The Court finds that he paid into the Retirement fund for 34 years and the parties were married for 17 years, (34/17 × .50=25%)."

[¶ 22] Mervyn Mertz does not argue the award to Darlene Mertz was improper. Rather, he contends the district court erroneously considered the other fifty percent, acquired prior to marriage, as a marital asset. He argues this "overstates" his awarded marital assets by $46,200. Again, while the source of the property is a factor weighing in favor of a party, the property is still considered part of the marital estate. *See Fraase*, 315 N.W.2d at 274 ("Although we have recognized that the time of the acquisition of property and its source is significant, we have nevertheless held that property acquired prior to the marriage by one spouse should be considered as part of the marital estate in determining what an equitable division would be."). "We have consistently held that property acquired before marriage must be included in the marital estate." *Neidviecky*, 2003 ND 29, ¶ 10, 657 N.W.2d 255. The district court did not err in its distribution of Mervyn Mertz's Iron Worker's Annuity or its classification of his pre-marriage Iron Worker's Annuity as a marital asset.

[¶ 23] Mervyn Mertz argues the district court erred in its valuation of other property such as the camper and the John Deere tractor. He also argues the district court overvalued his coin collection. Mervyn Mertz, noting the disparity between his and Darlene Mertz's evaluations, argues the district court assigned value without giving an explanation. However, this Court defers to the district court's valuation of property if it is not clearly erroneous and is within the range of evidence presented. *Gustafson*, 2008 ND 233, ¶ 11, 758 N.W.2d 895. The district court valued the property at a price in the middle of Darlene Mertz's and Mervyn Mertz's estimates. "[W]e do not reweigh conflicts in the evidence, and we give due regard to the trial court's opportunity to judge the credibility of the witnesses." *Crandall v. Crandall*, 2011 ND 136, ¶ 19, 799 N.W.2d 388 (citations and quotation marks omitted). The district court's valuation of other property is not clearly erroneous.

B

[¶ 24] Mervyn Mertz argues the district court failed to include all debts as of the date of trial. "Once all property

and debts of the parties are included, a trial court may consider which of the parties has incurred particular debts, and the purposes for which those debts were incurred, in determining an equitable allocation of the responsibility for repayment." *Neidviecky*, 2003 ND 29, ¶ 11, 657 N.W.2d 255.

[¶ 25] The district court found: "Darlene shall assume and pay her own medical bills. Mervyn shall assume and pay the loan on the camper, his truck, Darlene's vehicle, and any other debts listed." The district court also found that Mervyn Mertz's brother's student loans are a personal obligation, not marital debt, that Mervyn Mertz no longer has an obligation on Darlene Mertz's son's business loan and that the money Mervyn Mertz borrowed from his various family members after the separation is not marital debt. Mervyn Mertz was awarded the camper and his truck. The district court considered which of the parties incurred the debt, the purposes for which the debt was incurred and allocated responsibility for the debt accordingly. *See Neidviecky*, 2003 ND 29, ¶ 11, 657 N.W.2d 255. The district court's distribution of debts is not clearly erroneous.

[¶ 26] However, Mervyn Mertz correctly explains:

"The trial court[] reduced the marital debts to $49,165.00 and marital assets to $348,745.00. Mervyn was awarded $47,465.00 of the debt, which according to the trial court's Findings of Fact, Conclusions of Law, and Order for Judgment includes the 2012 Ford Pickup debt of $29,600; the 2008 Mercury Milan debt of $5,642; the 5th Wheel camper debt of $12,229; and the credit card debt of $1,300. The trial court's numbers do not compute. Mervyn's actual assigned debts equal $48,771, and based upon the values assigned on the 8.3 listing, $48,766.46."

A $1,306 discrepancy exists. Standing alone, this is de minimis error. *Halvorson v. Halvorson*, 482 N.W.2d 869, 872 (N.D. 1992) (explaining a relatively insignificant error, standing alone, does not constitute sufficient grounds for reversal of a judgment). However, this case is being remanded on other grounds and the district court must fix this discrepancy upon remand.

VI

[¶ 27] "Property division and spousal support are interrelated and intertwined and often must be considered together." *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 14, 714 N.W.2d 845 "Because of the interrelation of property division and spousal support, to the extent the district court's award of spousal support is intertwined with its property division, the district court may reconsider the issue of spousal support after it has properly calculated the total marital estate and redetermined the property distribution." *Lynnes*, 2008 ND 71, ¶ 27, 747 N.W.2d 93. We are reversing and remanding the spousal support award for further proceedings, and because spousal support is intertwined with the property distribution, the district court may reconsider its distribution of marital property and debt on remand.

[¶ 28] We reverse and remand the district court's divorce judgment for reconsideration of the issues of spousal support and property distribution.

[¶ 29] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.