2005 ND 38

**Donna K. RHODES, Plaintiff and Appellee**

v.

**Steven "Dusty" L. RHODES, Defendant and Appellant.**

**No. 20040234.**

Supreme Court of North Dakota.

Feb. 16, 2005.

Rehearing Denied March 4, 2005.

marriage whom Steven adopted. At the time of the marriage, the parties entered a prenuptial agreement specifying the method of distributing their property in the event of a divorce. During the marriage, irreconcilable differences developed between the parties, and in March 2003, Donna brought an action for separation. Steven countered with an action for divorce. After a hearing, the court entered a judgment dissolving the marriage and dividing the parties' property in accordance with the prenuptial agreement. Steven appealed, asserting the trial court departed from the terms of the prenuptial agreement in dividing the property and requesting this Court to redistribute the property.

Sherry Mills Moore, Bismarck, N.D., for plaintiff and appellee.

Irvin B. Nodland, PC, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Steven Rhodes appealed from a trial court judgment dissolving his marriage with Donna Rhodes on the ground of irreconcilable differences and dividing the parties' property under a prenuptial agreement executed by them at the time of their marriage. On appeal, Steven asserts the trial court misapplied the prenuptial agreement in distributing the property. We affirm in part, reverse in part, and remand for modification of the property distribution in accordance with this opinion.

I.

[¶ 2] Steven and Donna Rhodes were married in June 1999. They have three children born to them of this marriage, and Donna had a daughter from a prior

II.

[¶ 3] Under the Uniform Premarital Agreement Act, the parties to a premarital agreement may contract with respect to the disposition of property upon marital dissolution. N.D.C.C. § 14–03.1–03(1)(c). A prenuptial agreement is a contract, and its interpretation is primarily a question of law for the court to decide. *Matter of Estate of Zimmerman*, 1998 ND 116, ¶ 13, 579 N.W.2d 591. Only if the prenuptial agreement is ambiguous or if it does not reflect a spouse's intent because of fraud, mistake, or accident can a court employ parole evidence to clarify the terms of the contract or to find the intent of the parties. *Id.* Findings of fact made by the trial court in distributing marital property are reviewed on appeal under N.D.R.Civ.P. 52(a) and will not be set aside unless clearly erroneous. *See Fox v. Fox*, 2001 ND 88, ¶ 14, 626 N.W.2d 660. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence there is a definite

and firm conviction a mistake has been made. *Id.*

### III. Pontiac Automobile

[¶ 4] Steven argues the trial court erred in awarding a 2001 Pontiac Montana van to Donna. In his appellate brief he states:

> The Pontiac should have been considered a marital asset. Even if [Steven] was not to get a credit for the pay-off he made of the loan that was against Donna's previous car, at a minimum the Pontiac should have been considered marital property and its value divided equally between the parties.

The prenuptial agreement states, "property titled in either person's individual name, whether acquired before or after marriage, will remain the property of the person in whose name it is so entitled and will not be considered marital property for the purposes of a divorce." Under the agreement, Donna is listed as owning a 1996 Pontiac Grand Prix with a value of $9,200. Donna acquired the Pontiac Montana van by trading in the Grand Prix, and it is apparently titled in her name. Although the parties agree that before the marriage Steven paid off some debt on the Grand Prix, there is nothing in the prenuptial agreement that requires reimbursement of Steven for paying that debt. Nor does the agreement prohibit the court from awarding the 2001 Pontiac Montana van to Donna as the replacement vehicle for the Pontiac Grand Prix, which was listed as her property. In awarding this automobile to Donna, the court stated, "[t]here is no dispute about disposition of the vehicles, so Donna keeps the Pontiac Montana ... and Rhodes Electric keeps the Dodge pickup." We conclude the court's disposition of this particular asset did not constitute a misapplication of the parties' prenuptial agreement.

### IV. Gate City Accounts

[¶ 5] At the time of the divorce, there were three Gate City Savings & Loan accounts titled in Donna's name. She testified that two of the accounts, each with an $11,000 balance, were intended to be set aside for the education of their son and daughter and that a third account, with a $24,000 balance, was being held for Donna's own purposes. The total amount in these accounts was $46,000. Steven asserts that $22,000 of the funds in the accounts "came about as a result of a pass-through of losses Rhodes Electric had experienced during a particularly disastrous year." He asserts that the $46,000 in the accounts could have been awarded to him and, in fairness, should have at least been equally divided between the parties.

[¶ 6] Under paragraph five of the prenuptial agreement, "property titled in either person's individual name, whether acquired before or after marriage, will remain the property of the person in whose name it is so entitled and will not be considered marital property for the purposes of a divorce." The trial court found "the money came from a tax refund from the parties' joint filing. Steven gave the money to Donna with no restrictions. The money was hers and remains hers to do with as she pleases." Following the specific terms of the prenuptial agreement, the trial court awarded these accounts, which were titled in Donna's name, to Donna concluding, "[t]he terms of paragraph 5 confirm that the parties intended that any property solely in a party's name, even if acquired after the marriage, belongs to the named party." We conclude the trial court's findings on this issue are not clearly erroneous and its disposition of the Gate City accounts is in accordance with the prenuptial agreement.

## V. Edward Jones Account

■ [¶ 7]  Steven objects to the court's award to Donna of an Edward Jones retirement account in the amount of $4,840. Donna apparently concedes that the account is titled solely in Steven's name, because she states in her appellate brief that "[Steven] had sole access" to the account. The court awarded the account to Donna stating, "Steven's Exhibit 27 shows the account going to Donna, so the court will give the account to Donna." However, the N.D.R.Ct. 8.3 Property and Debt Listing indicates this account is a retirement account. We conclude the court's disposition of this asset is not in accordance with the prenuptial agreement, which provides, "[n]either party shall have any claim to any retirement account ... of the other during any divorce proceedings." This is a retirement account titled in Steven's name, and under the foregoing language of the prenuptial agreement, we conclude it was error for the court not to award this account to Steven. We, therefore, reverse that part of the court's property distribution, and upon remand, direct the court to award the Edward Jones retirement account to Steven.

## VI. Residential Property

[¶ 8]  At the time of the marriage, the Rhodes owned a home at 100 Riverside Park Road in Bismarck. The parties built a new home on the property and moved into it in April 2000. In the prenuptial agreement, the parties valued the house at $150,000 and at the time of the divorce, the parties agreed the value was $269,000, for a total increase in value of $119,000 during the marriage. The evidence shows that the State intends to condemn this house, because it is in an area needed for construction of a new bridge across the Missouri River. There is also evidence the State might pay a relocation allowance of $40,000. The trial court made the following disposition of this property, with detailed explanation:

[The parties] moved into the new house at 100 Riverside Park Road in April of 2000. To help finance the new house, Donna sold one of her three duplexes and deposited the proceeds ($92,652) in the parties' joint checking account at Bank Center First. The money was also used for living expenses and bills. Steven borrowed $110,000 from Rhodes Electric. Steven testified that he deposited the $110,000 in his personal/business account at Kirkwood Bank. Initially, he said that the money was used to help pay for the new house. However, when cross-examined, he said that the money "could have" been used to pay the parties' tax bill for the 1998 tax year. Steven has repaid all but $25,000 of the loan from Rhodes Electric by on-paper shareholder distributions, in which Steven does not receive an actual distribution, but the loan balance is reduced on the Rhodes Electric's books.

The house at 100 Riverside Park Road is slated to be demolished to make way for a new bridge over the Missouri River. The North Dakota Department of Transportation may be paying a $40,000 "relocation fee" over and above the purchase price of the property. ...

At the time the parties executed the Agreement, they agreed the property at 100 Riverside Park Road ... was valued at $150,000. Again, the parties' agreement, not a value for tax purposes, controls. The parties agree the property is now valued at $269,000 according to the Rule 8.3 Property and Debt Listing. Therefore, the property increased in value by $119,000 during the marriage. At a minimum, each party is entitled to one-half that increase, or $59,500. However, if the Department of Transportation (or another purchaser) buys the

property for more than $269,000, each party is entitled to one-half of the purchase price that is in excess of $150,000. Each party is also entitled to one-half the $40,000 relocation fee, as that is an amount that will increase the value of the property.

During the marriage, Donna sold a rental property and contributed $92,652 of the proceeds of the sale toward the house Steven built at 100 Riverside Park Road. The Agreement does not specifically address this issue. In his Supplemental Pretrial Brief and his testimony at trial, Steven acknowledged that $92,652 should be restored to Donna. Further, Steven will be keeping the property and would unjustly benefit from Donna's contribution if she were not compensated. Therefore, the $92,652 will be restored to Donna.

[¶ 9] With regard to disposition of the real property, the prenuptial agreement provides in relevant part:

As to any real property held solely in Steven's individual name at the time of the contemplated marriage, the value of the same as reflected in Exhibit "A" shall be that portion which shall not be considered marital property for the purposes of a divorce or the election of an augmented estate in a probate proceeding, with any increase in the value to be considered marital property for all purposes. This provision shall be binding upon the parties, notwithstanding titling the property in both names, provided that any joint tenancy property shall become solely the joint tenant's in the event of death of the other.

[¶ 10] Steven objects to the court awarding Donna an equal share of any money the parties may receive for this property in excess of the $269,000 valuation the parties have placed on the property at the time of the divorce. Steven also objects to the court awarding Donna an equal share of any relocation award which might be received from the State upon condemnation of the property. The prenuptial agreement provides that "any increase in the value" of real property should be considered "marital property for all purposes." We conclude the court did not err in awarding the parties an equal amount of the increased value of the property including an equal split of any money received for the property in excess of its $269,000 current value, and including an equal share of the relocation award for condemnation of the property.

[¶ 11] The court found that Donna had invested $92,652 for the residential property by the sale of her duplex and that she should be reimbursed for that. Steven does not object to the court recognizing Donna's personal investment toward the home and reimbursing her for that investment, but he claims "it was error for the Court to return the full amount of that investment to Donna off the top of the appreciation with no similar credit or consideration being given to [Steven] for the investment he had made out of his non-marital assets."

[¶ 12] We conclude it was not error for the court to refuse to reimburse Steven for the $25,200 of outstanding loans that Steven asserts may have been used for the residential property. By his own testimony, Steven concedes that the $25,200 may have been used for unrelated purposes such as paying for taxes. Consequently, we conclude it was not clearly erroneous for the trial court to find that Steven should not be reimbursed from the residential property for the $25,200 outstanding loan.

[¶ 13] However, we do agree with Steven that the trial court erred in the method it used in reimbursing Donna

for the $92,652 she invested from the sale of her duplex for construction of the new residential property. The court equally split between the parties the $119,000 increase in value of the residential property, giving each $59,500. In addition to Donna's $59,500 share, the court also awarded her $92,652 as reimbursement for her contribution to construction of the property. In essence, the trial court awarded Donna a "double dip" for her contribution to the residential property by allowing her to have an equal share of the increased value, which included her investment in the construction of the property, and then also awarding her full reimbursement of the $92,652.

[¶ 14] The trial court found that Donna sold a rental property and contributed $92,652 of the proceeds of the sale toward the house Steven built at 100 Riverside Park Road. The record supports the trial court's finding. The prenuptial agreement provides that any real property held solely in Donna's name would not be considered marital property for the purposes of a divorce, but would be subject to a note and mortgage should Steven reduce or satisfy an existing mortgage. The premarital agreement also provides that real property held solely in Steven's name at the time of the marriage shall not be considered marital property except that "any increase in the value" is "to be considered marital property for all purposes." The first "WHEREAS clause" of the agreement states the parties intend by the agreement to avoid acquiring interests in the property of the other party as "incidents of their marriage relationship."

[¶ 15] We construe contracts as a whole to give effect to each provision to determine the parties' intent. *Thompson v. Associated Potato Growers, Inc.*, 2000 ND 95, ¶ 9, 610 N.W.2d 53. Reading the foregoing clauses of the agreement together, the unambiguous intent is to reserve to each party his or her own property and to divide as marital property thereafter the increase in value of the real property. To carry out the intent of the prenuptial agreement, it is appropriate for the court to reimburse Donna for her contribution to the new construction from the proceeds of the sale of her duplex, because those monies are fairly traceable to the residential home. But the reimbursement must, therefore, come from the proceeds of the new home and not other marital assets.

[¶ 16] We conclude the court, by awarding Donna an equal share of the new home's increased value and also a full reimbursement of the duplex proceeds used for the new home construction, misapplied the contract and failed to carry out the intent of the parties that each retain his and her own property brought into the marriage. To carry out that intent, the court must reimburse Donna's $92,652 contribution to the new home construction from the increased value of the new home.

[¶ 17] We therefore conclude the prenuptial agreement requires the court to reimburse Donna the $92,652 from the $119,000 increase in the value of the property and then to divide the remainder of the increased value between the parties. Consequently, from the $119,000 increase in the value of the property, the court should reimburse Donna the $92,652 leaving a remaining balance of $26,348, which the court should then split equally between the parties, giving each a $13,174 share. With this modification of the distribution of the residential property, we affirm the trial court's disposition of it. We affirm the court's award of an equal share of any excess the parties receive above the $269,000 value the parties placed on the property and an equal share of the relocation expenses.

## VII.

[¶ 18]   In accordance with this opinion, we affirm the trial court's judgment in part and reverse in part.  We affirm the court's distribution of the Pontiac van and the Gate City accounts to Donna.  However, we reverse the court's distribution to her of the Edward Jones account and remand with directions that account be awarded to Steven.  We also partially reverse the trial court's disposition of the residential property and remand with directions the trial court reimburse Donna $92,652 from the $119,000 increase in the value of that property and then split equally between the parties the balance of the increased value.  We affirm the court's equal division of any amounts received for the residential property in excess of $269,000 and of any relocation award received for condemnation of the property.

[¶ 19] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.