2005 ND 111

**Cheryl Ann BRANDNER, Plaintiff and Appellee**

v.

**Allan Michael BRANDNER, Defendant and Appellant.**

No. 20040236.

Supreme Court of North Dakota.

June 22, 2005.

William D. Schmidt, Schmitz & Schmidt, Bismarck, N.D., for plaintiff and appellee.

Kent M. Morrow, Severin, Ringsak & Morrow, Bismarck, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]  Allan Michael Brandner appealed from a judgment granting Cheryl Ann Brandner a divorce, dividing their marital property, and setting his child support obligation for their two children.  Cheryl cross-appealed from the part of the judg-ment setting the effective date of Allan's child support obligation.  We conclude the trial court did not err in setting the effective date of Allan's child support obli-gation.  We further conclude, however, the trial court erred as a matter of law in treating Allan's business debts as non-marital property and erred as a matter of law in calculating Allan's child support ob-ligation.  We affirm in part, reverse in part, and remand for reconsideration of the property distribution and for recalcula-tion of Allan's child support obligation.

I

[¶ 2]  Cheryl and Allan, ages 48 and 51 respectively at the time of trial, were mar-ried on October 5, 1985, in Herried, South Dakota.  During the marriage, the couple had two children who were born in August 1987 and June 1990.  When they married, Allan was working for the Soo Line Rail-road where he had been employed since 1971.  The couple lived in Aberdeen, South Dakota, and Allan commuted to work.  In 1991, Allan became employed with DMVW Railroad as manager of right-of-way main-tenance and the family moved to Bis-marck.  In 1995, Allan left his $38,000 per year job with the railroad and became employed with R & R Railroad Construc-tion at an annual salary of $50,000.  How-ever, Allan left the railroad construction job after a few months and began working at a Bismarck livestock company.  He la-ter entered into a business relationship with and worked at East River Livestock in Linton, a livestock sales barn that even-tually failed.  At the time of trial, Allan had potential debts from this failed busi-ness venture in excess of $600,000.  The debts included personal loans, a bond obli-gation and a small business loan for the sales barn.  In the meantime, Cheryl had been working at a medical clinic in Bis-marck since 1992 and had been doing part-

time transcription work at home since 1996.

[¶ 3] Financial problems became a concern for the couple. Cheryl testified that Allan was primarily responsible for handling the family's financial affairs and Allan would not share any of his business information with her. Allan testified that when he attempted to discuss his business dealings with Cheryl, she refused and avoided the subject. Cheryl commenced this divorce action in April 2003 and learned that Allan had not filed the family's tax returns for the 1995 through 2003 tax years. Allan explained that he failed to file the tax returns because he "couldn't get all the documentation from Cheryl on her checking account" for purposes of claiming tax deductions. Cheryl contacted an accountant and filed tax returns for herself back to 1999, the earliest year allowed. Allan testified he was currently living with his parents on their farm in South Dakota and was receiving about $400 per month in income from them. After Cheryl commenced the divorce action, Allan provided no financial support for Cheryl or the children.

[¶ 4] In June 2004, the trial court granted the divorce. The court awarded Cheryl marital property with a net value of $43,747, and Allan marital property with a net value of $24,325. The court also awarded each party 50 percent of Allan's Tier II railroad retirement benefits of $450 per month when he retires or reaches retirement age. The court further found that "most of Allan's business debts were not related to the marital estate and are his own responsibility," and allocated those potential debts of $659,771 to Allan. The court awarded custody of the children to Cheryl and ordered Allan to pay child support in the amount of $723 per month. In calculating the child support obligation, the court found that Allan "is underem-

ployed and that he is capable of earning $38,000 per year." Although Cheryl requested retroactive child support, the court ordered that, "[g]iven the debts Allan will be paying ... it [is] in the best interests of all concerned that the child support payments will begin with the month of June, 2004."

## II

[¶ 5] On appeal, Allan argues the trial court's property and debt distribution was inequitable and erroneous because it was based on inappropriate factors.

[¶ 6] Under N.D.C.C. § 14–05–24(1), when a divorce is granted, the trial court must make an equitable distribution of the property of the parties. All of the marital assets and debts must be included for the court to distribute the marital assets under the *Ruff–Fischer* guidelines. *Horner v. Horner*, 2004 ND 165, ¶ 9, 686 N.W.2d 131. Under these guidelines, the court considers:

> The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

*Weigel v. Weigel*, 2000 ND 16, ¶ 6, 604 N.W.2d 462.

[¶ 7] Courts generally start with the view that marital property should be divided equally, and although the division need not be exactly equal to be equi-

table, the trial court must explain any substantial disparity. *Reiser v. Reiser,* 2001 ND 6, ¶ 10, 621 N.W.2d 348. Although a long-term marriage generally supports an equal division of property, economic fault is also a proper factor for the court to consider in dividing marital property. *Horner,* 2004 ND 165, ¶¶ 12, 16, 686 N.W.2d 131. A party's dissipation of assets can be a "particularly relevant factor" in the determination. *Halvorson v. Halvorson,* 482 N.W.2d 869, 871 (N.D.1992).

▆▆▆ [¶ 8] A trial court's decision on division of marital property is a finding of fact reversible on appeal only if clearly erroneous. *Hogan v. Hogan,* 2003 ND 105, ¶ 14, 665 N.W.2d 672. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made. *Walker v. Walker,* 2002 ND 187, ¶ 7, 653 N.W.2d 722.

[¶ 9] In dividing the marital property and debts, the court explained:

Cheryl is 48 and Allan is 51. They both have years left to work to provide for themselves and their children. Cheryl is established and hard-working in two jobs. Allan has chosen to be underemployed, although he is capable of earning $38,000 per year. Their marriage is one of long duration of more than eighteen years. While Cheryl can be faulted for turning a blind eye to Allan's financial management, Allan's conduct has since 1995 been very detrimental to both of them and their children financially and emotionally. Their stations in life are modest, but their circumstances and necessities are different. Cheryl has worked steadily and taken care of quite a few debts during the interim and she is well established in

her career and part-time job. Allan is adrift and he needs to get himself and his life squared away soon. Cheryl's health is not an issue, but Allan states he has back problems, but that has not kept him from working in the past. They have a modest amount of real and personal property, as well as marital debts, but their financial circumstances are precarious due to the enormous debt Allan accumulated on his own without Cheryl's knowledge or consent. The[ir] property has no extraordinary value and very little income producing capacity.

. . . .

As Allan ran up all of his heavy debts, he did not share any financial information with Cheryl, which is a pattern he followed throughout their marriage. In fact, he had received from Cheryl her W–2s every year, but he filed no tax returns since 1995. Cheryl thought he had been signing her name as he had done before, but when she discovered the problem, she filed taxes for years as far back as she could and received the tax refunds on the income she had earned.

The Court is going to require Allan to take responsibility for his business debts in connection with his East River Livestock company. He has been considering bankruptcy, which is something Cheryl wants to avoid. Given the fact the mar[it]al debts seem to be manageable, Allan will be left to decide the question of bankruptcy for himself, but the Court specifically finds he should not be allowed bankruptcy as to any marital debts on which Cheryl might also be liable.

. . . .

The Court is aware Allan has been contemplating bankruptcy, which is probably the best thing for him given his financial situation with his non-marital

debts of $659,771. The Court has assigned no value to Allan's non-marital contingent claim for $108,385. The Court has considered his potential bankruptcy in arriving at the unequal, yet equitable distribution of the marital estate. Hopefully this distribution of the assets will allow Allan to go bankrupt without impacting Cheryl.

[¶ 10] The trial court erroneously treated Allan's $659,771 business debts accumulated during the marriage as "non-marital debts." In dividing the marital estate, the trial court must determine the net marital worth by considering *all* property and debt accumulated by the parties and by using "the elementary accounting equation of assets minus liabilities to determine the net worth of the marital property." *Neidviecky v. Neidviecky,* 2003 ND 29, ¶ 11, 657 N.W.2d 255. A trial court may consider which of the parties has incurred particular debts, and the purposes for which those debts were incurred, in determining an equitable allocation of the responsibility for repayment, but those debts nevertheless remain a part of the marital estate. *Id.* The trial court granted Cheryl marital property worth $125,582 and allocated to her $81,835 in marital debt for a net award of $43,747. The court granted Allan marital property worth $70,732 and allocated to him $46,407 in marital debt for a net award of $24,325. The court's allocation of the $659,771 "non-marital" business debts to Allan results in Allan's share of the marital estate being minus $635,446.

[¶ 11] The trial court did not apply the correct law in determining and distributing the marital estate. Given the substantial amount of debts excluded from the marital estate in this case, we cannot be sure the court would have reached the same result in allocating the assets and debts had it correctly included the business debts as part of the marital estate before allocating the debts between the parties. *Neidviecky,* 2003 ND 29, ¶ 13, 657 N.W.2d 255. The parties are entitled to a division of their property under a correct application of the law by the trial court. *Id.* at ¶ 12; *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 622 (N.D.1994); *Anderson v. Anderson,* 368 N.W.2d 566, 569 (N.D.1985). We express no opinion whether the property distribution would have been equitable if the trial court had included Allan's business debts in the marital estate and allocated those debts to him for the reasons stated by the trial court.

[¶ 12] We reverse and remand for reconsideration of the property distribution.

### III

[¶ 13] Allan argues the trial court erred in computing his child support obligation.

[¶ 14] Child support determinations involve questions of law subject to a de novo standard of review, findings of fact subject to a clearly erroneous standard of review, and may involve matters of discretion subject to an abuse of discretion standard of review. *Interests of A.M.S.,* 2005 ND 64, ¶ 5, 694 N.W.2d 8.

[¶ 15] Allan argues the trial court erred in finding that he was underemployed. The record establishes that Allan was earning $38,000 before he left his job with the railroad. Allan testified that from January through June of 2003, he earned approximately $17,000 in salary and commissions from East River Livestock. Allan testified he was living with his parents, was "helping my folks," and was receiving $400 per month compensation from them. At the time of trial, Allan had no plans for changing his employment situation. The determination of whether an individual is underemployed for pur-

poses of establishing a child support obligation is within the discretion of the trial court. *Torgerson v. Torgerson,* 2003 ND 150, ¶ 10, 669 N.W.2d 98. We conclude the trial court did not abuse its discretion in finding that Allan is underemployed.

[¶ 16] Allan argues the trial court used an incorrect method of imputing income in this case. When a child support obligor is underemployed, the court is permitted under the guidelines to impute income to the obligor. *Orvedal v. Orvedal,* 2003 ND 145, ¶ 11, 669 N.W.2d 89. In a case of underemployment, N.D. Admin. Code § 75–02–04.1–07(3) requires the use of whichever of three methods of measuring earning capacity results in the greatest imputed income. *Knoll v. Kuleck,* 2004 ND 199, ¶ 6, 688 N.W.2d 370. With exceptions, N.D. Admin. Code § 75–02–04.1–07(3) states:

> [G]ross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.
>
> a. A monthly amount equal to one hundred sixty-seven times the hourly federal minimum wage.
>
> b. An amount equal to six-tenths of prevailing gross earnings in the community of persons with similar work history and occupational qualifications.
>
> c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided.

[¶ 17] In determining Allan's child support obligation, the trial court reasoned:

> [Allan] was making $38,000 annually with the railroad. He next worked for a railroad construction business for $50,000 per year, but he only stayed with that job for ninety days. He worked at a Bismarck livestock company before his involvement in the now defunct East River Livestock in Linton. While he was involved in that business, he accumulated substantial debts. He was paid $1,600 per month plus a commission of $0.75 per head, and the first six months of 2003 his commission was $7,500. At $1,600 per month for six months he made $9,600, which when added to his six months' commission of $7,500 equals $17,100 for six months. If you double that amount for the whole year, Allan would make $34,200. At the time of the hearing, Allan lived with his parents on their ranch and they paid him $400 per month plus board and room, and he would buy and sell cattle for them. The Court finds he is underemployed and that he is capable of earning $38,000 per year.

The court applied allowable deductions based on the $38,000 figure, found Allan's monthly net income to be $2,500, and used the applicable child support amount of $723 under N.D. Admin. Code § 75–02–04.1–10.

[¶ 18] The trial court's method of calculating Allan's imputed income does not comport with any of the three methods outlined in N.D. Admin. Code § 75–02–04.1–07(3). Nor does the method used comply with the exception set forth in N.D. Admin. Code § 75–02–04.1–07(9) allowing imputation of income when the obligor makes a voluntary change in employment. We have held N.D. Admin. Code § 75–02–04.1–07(9) requires the court to calculate imputed income based on the obligor's *actual* income in a prior twelve-month period, and a court cannot use in-

come earned during less than the twelve-month period and "extrapolate that to a twelve-month figure." *Logan v. Bush,* 2000 ND 203, ¶ 21, 621 N.W.2d 314; *see also Christoffersen v. Giese,* 2005 ND 17, ¶ 8, 691 N.W.2d 195. We recognize that the parties were of little assistance in providing evidence to enable the court to impute Allan's income correctly. Nevertheless, a court errs as a matter of law if it fails to comply with the child support guidelines in determining an obligor's child support obligation. *Knoll,* 2004 ND 199, ¶ 5, 688 N.W.2d 370.

[¶ 19] We conclude the trial court erred as a matter of law in computing Allan's child support obligation.

IV

[¶ 20] Cheryl argues the trial court erred in establishing Allan's child support obligation effective June 2004, rather than retroactive to April 2003, the month she commenced the divorce action.

[¶ 21] A trial court's decision whether to award past child support is discretionary and will not be overturned on appeal unless the court has abused its discretion. *McDowell v. McDowell,* 2003 ND 174, ¶ 27, 670 N.W.2d 876; *cf. Geinert v. Geinert,* 2002 ND 135, ¶ 10, 649 N.W.2d 237 (holding "a modification of child support generally should be made effective from the date of the motion to modify, absent good reason to set some other date," and the "court retains discretion to set some later effective date, but its reasons for doing so should be apparent or explained").

[¶ 22] The trial court refused to make Allan's child support obligation retroactive to the date of filing because of the substantial "debts Allan will be paying." The court found it "in the best interests of all concerned" that the payments begin in June 2004. We cannot say the trial court abused its discretion. However, because the case must be remanded for reconsideration of the property distribution and for recalculation of Allan's child support obligation, the court may also reconsider the effective date for payments to begin if it wishes to do so.

V

[¶ 23] We affirm the effective date of Allan's child support obligation, reverse the property distribution and child support award, and remand for reconsideration of the property distribution and for recalculation of Allan's child support obligation.

[¶ 24] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 25] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.