2005 ND 203

**Jerome JANGULA, Plaintiff and Appellee**

v.

**Gloria A. JANGULA, Defendant and Appellant.**

**No. 20050070.**

Supreme Court of North Dakota.

Nov. 29, 2005.

Maury C. Thompson, Bismarck, N.D., for plaintiff and appellee.

Faron E. Terry, Terry Law Office, Minot, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Gloria Jangula appealed from a South Central Judicial District Court judgment in a divorce action. The district court awarded the marital home to Jerome Jangula. Gloria Jangula contends the marital home should have been awarded to her. We reverse and remand.

I

[¶ 2] Gloria Jangula and Jerome Jangula were married on September 21, 2002. Prior to the marriage, the parties entered into a prenuptial agreement. The agreement was entered into voluntarily and neither party has contested the agreement. The parties had no children from this marriage.

[¶ 3] Jerome Jangula was a farmer and business owner when the parties got married. Gloria Jangula was employed part-time at Marshall Field's and was receiving unemployment benefits. Jerome Jangula brought a substantial amount of real and personal property into the marriage. Jerome Jangula also had debt relating to his farm and business ventures. Gloria Jangula brought little property into the marriage and also had debt of her own.

[¶ 4] On December 13, 2002, the parties purchased a home in Bismarck. Because of financial problems and bankruptcy, Gloria Jangula did not join in the home mortgage with Jerome Jangula. Initially, the title to the home was in Jerome Jangula's name only. Jerome Jangula eventually executed a quit claim deed which deeded the home to Jerome Jangula and Gloria Jangula as joint tenants.

[¶ 5] Jerome Jangula testified he provided all the money for the down payment on the home. Gloria Jangula testified she provided some of the down payment but was not able to show the exact amount she provided. The source of the down payment came from Jerome Jangula's CRP payment and from insurance proceeds from his farm operation. When the parties purchased the home, the down payment money was located in one of the parties' joint bank accounts. Jerome Jangula testified Gloria Jangula did not contribute to the mortgage payments.

[¶ 6] In April 2004, the parties separated. Jerome Jangula left the marital home and served Gloria Jangula with divorce papers. Gloria Jangula continued to live in the home until the divorce decree awarded the home to Jerome Jangula.

[¶ 7] The district court found the parties' prenuptial agreement governed distribution of the marital home. Therefore, the court awarded the home to Jerome

Jangula. The district court highlighted clauses in the prenuptial agreement providing that property acquired before the marriage would remain the property of the party who brought the property into the marriage and any property related to or involved with Jerome Jangula's business would remain separate property. The district court found the down payment came from Jerome Jangula's CRP payment and insurance proceeds related to farm equipment. The district court determined the CRP and insurance payments were related to or involved with Jerome Jangula's business. Therefore, the district court concluded the down payment was not made with marital property and the home was acquired with property related to or involved with Jerome Jangula's business and was therefore not marital property.

[¶ 8] On appeal, Gloria Jangula argues the district court erred in finding the prenuptial agreement governed distribution of the marital home. Gloria Jangula argues the prenuptial agreement does not control the award of the home and therefore the *Ruff–Fischer* guidelines must be applied to distribute the home. Gloria Jangula contends application of the *Ruff–Fischer* guidelines would result in her being awarded the home.

## II

[¶ 9] Under the Uniform Premarital Agreement Act in N.D.C.C. § 14–03.1–03(1)(c), "the parties to a premarital agreement may contract with respect to the disposition of property upon marital dissolution." *Rhodes v. Rhodes,* 2005 ND 38, ¶ 3, 692 N.W.2d 157. "A prenuptial agreement is a contract, and its interpretation is primarily a question of law for the court to decide." *Id.* This Court reviews "questions of law de novo on the entire record." *Bladow v. Bladow,* 2005 ND 142, ¶ 9, 701 N.W.2d 903. "Contracts are to be interpreted in a manner that gives effect to the parties' mutual intent at the time of contracting." *Binek v. Binek,* 2004 ND 5, ¶ 13, 673 N.W.2d 594; N.D.C.C. § 9–07–03.

[¶ 10] Paragraph 2(a) of the parties' prenuptial agreement provides:

The following shall constitute and remain the separate property of the respective parties:

a. Property acquired by a party before the contemplated marriage or property acquired at any time by bequest, devise, descent, or by gift from a person other than the other party to this Agreement; the increase in value to such property whether or not such appreciation is due in whole or in part to the contributions or efforts of the other party to this Agreement; property acquired in exchange for such property, the proceeds of sale thereof, and property acquired with such proceeds or with other separate property;

[¶ 11] Paragraph 4 of the parties' prenuptial agreement provides:

Any property acquired after marriage, except any property related to or involved with the businesses of HUSBAND (the farm business and Four Star Farm Services, Inc.) shall be considered marital property and shall not be subject to this agreement.

[¶ 12] The money used to make the down payment on the parties' home came from Jerome Jangula's CRP payment and from insurance proceeds from his farm operation. Jerome Jangula argues the money for the down payment was separate property he possessed prior to the marriage and was also related to his farm operation. Therefore, Jerome Jangula argues the down payment was separate property under the prenuptial agreement. Further, Jerome Jangula argues that because the down payment money was sepa-

rate property and was used to purchase the home after the marriage, the trial court properly determined the home was Jerome Jangula's separate property under the prenuptial agreement and was not part of the marital estate.

[¶ 13] Although the parties each interpret the prenuptial agreement to support their respective positions, we believe subsequent actions are significant in determining the issue. Prior to the parties' purchase of the home, the money used for the down payment was placed into one of the parties' joint bank accounts by Jerome Jangula. Once the money was placed into the joint bank account, Gloria Jangula could not only write checks, but she could have withdrawn the money or transferred money from that bank account. Gloria Jangula had full legal access to the money. Because the joint account was a multiple party account between Jerome Jangula and Gloria Jangula with right of survivorship upon death, had Jerome Jangula died prior to purchasing the home, Gloria Jangula would have received any money located in the joint bank account as the survivor on the account.

[¶ 14] Once separate property, or property exempt from being included as marital property, is commingled or placed into a joint bank account, the property no longer has any separate identity and therefore becomes marital property. *See Vitko v. Vitko*, 524 N.W.2d 102, 103 n. 1 (N.D.1994) (agreeing with the court in *In re Marriage of Hapaniewski*, 107 Ill. App.3d 848, 63 Ill.Dec. 535, 438 N.E.2d 466 (1982), that exempt property becomes marital property once the two are commingled); *See also Heley v. Heley*, 506 N.W.2d 715, 718 (N.D.1993) (holding premarital assets which have been commingled and no longer have any separate identity should be included in the marital estate). The parties' prenuptial agreement may have allowed Jerome Jangula to keep the money for the down payment as separate property. However, once the money was placed into the joint account it was no longer separate property and the prenuptial agreement no longer excluded the money from the marital estate. The money became marital property and, therefore, the home was purchased with marital property.

[¶ 15] Furthermore, after the home was purchased in his name alone, Jerome Jangula executed a quit claim deed which deeded the home to himself and Gloria Jangula as joint tenants. This is a significant legal act. Title to joint tenancy property vests immediately in a surviving joint tenant upon the death of the other joint tenant. *Cranston v. Winters*, 238 N.W.2d 647, 651 (N.D.1976). The property passes to the survivor by right of survivorship and not by will. *Id.* Jerome Jangula could not convey clear title to the property without Gloria Jangula joining in the conveyance. *See Olson v. Fraase*, 421 N.W.2d 820, 830 (N.D.1988) (holding a joint tenant may not convey or encumber another joint tenant's interest in property without the authorization or consent of the co-tenant). This subsequent act destroys the separate identity or ownership of the home in Jerome Jangula, notwithstanding the agreement's provisions about property acquired after marriage.

[¶ 16] Because the home was purchased with marital property and was placed into joint tenancy ownership, the home must be included in the division of the parties' property upon divorce. We remand to the trial court so the trial court may apply the *Ruff–Fischer* guidelines to distribute the home. "The trial court must consider the *Ruff–Fischer* guidelines to aid in the determination of an equitable distribution of the property." *Moilan v. Moilan*, 1999 ND 103, ¶ 18, 598 N.W.2d 81.

"The parties are entitled to a division of their property under a correct application of the law by the trial court." *Brandner v. Brandner*, 2005 ND 111, ¶ 11, 698 N.W.2d 259.

## III

[¶ 17] The judgment is reversed and remanded to the trial court for further proceedings in accordance with this opinion.

[¶ 18] DALE V. SANDSTROM, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

KAPSNER, Justice, concurring in the result.

[¶ 19] I concur with the result of the majority opinion. The matter must be returned to the trial court to apply the *Ruff–Fischer* guidelines to the distribution of the house as part of the equitable division of property. This result is dictated by the terms of the prenuptial agreement itself:

### PROPERTY ACQUIRED AFTER MARRIAGE

4. Any property acquired after marriage, except any property related to or involved with the businesses of HUSBAND (the farm business and Four Star Farm Services, Inc.) shall be considered marital property and shall not be subject to this agreement.

[¶ 20] Under paragraph 7 of the agreement, the parties have waived rights to equitable distribution except for property that falls under paragraph 4:

### WAIVER OF EQUITABLE DISTRIBUTION

7. *Except as otherwise provided in paragraph 4.. of this Agreement,* it is agreed and understood between the parties that each does hereby waive and relinquish whatever right they may acquire to share in the assets of the other as a result of their marriage. Each specifically waives and relinquishes all of their rights to equitable distribution. It is specifically agreed between the parties that in the event of a divorce or annulment there shall be no equitable distribution of any assets held by either as his or her separate property.

(Emphasis added.)

[¶ 21] Under paragraph 4 of the prenuptial agreement, property acquired after the marriage is considered marital property unless the acquired property is related to or involved in the businesses of the husband which are specifically identified in paragraph 4 as "the farm business and Four Star Farm Services, Inc."

[¶ 22] The house was acquired after the marriage. Although Jerome Jangula persuasively shows the funds used to purchase the house were related to the farm business, he does not argue the house is related to either of the identified businesses. Paragraph 4 requires that the acquired property itself be related to or involved with the businesses. It is not. Therefore, paragraph 4 determines that the acquired property, the house, "shall be considered marital property and shall not be subject to this agreement." Inclusion of the house in marital property is only the beginning of the analysis, and the trial court has not determined how the *Ruff–Fischer* guidelines will impact on its distribution of the house as part of the equitable division of marital property.

[¶ 23] Carol Ronning Kapsner