Filed 9/16/09 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2009 ND 164

Roxann Caroline Tweeten, Plaintiff and Appellee

v.

Harold Kenyon Tweeten, Defendant and Appellant

No. 20090033

Appeal from the District Court of McLean County, South Central Judicial District, the Honorable David E. Reich, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Sandstrom, Justice.

Jessica Jo Wolf, P.O. Box 249, Beulah, N.D. 58523-0249, for plaintiff and appellee.

Garrett David Ludwig, P.O. Box 1266, Mandan, N.D. 58554-7266, for defendant and appellant.

Tweeten v. Tweeten

No. 20090033

Sandstrom, Justice.

[¶1] Harold Tweeten appeals from a divorce judgment dissolving his marriage with Roxann Tweeten and dividing the parties’ property.  Harold Tweeten argues the district court erred in failing to enforce the terms of the parties’ premarital agreement.  We reverse the judgment, and remand for further proceedings.  

I

[¶2] Harold and Roxann Tweeten were married in 1990, and have four children together.  Before the wedding, Harold and Roxann Tweeten executed a premarital agreement, providing that each would retain title, management, and control of the property disclosed in the agreement to the same extent as if they had remained single:

Each of the parties shall retain the title, management and control of the estates now owned by each of them, whether real, personal or mixed, and all increase or addition thereto, entirely free and unmolested by the other party and may encumber, sell, dispose, give or provide by will for the disposition of any or all of such estates so separately owned and possessed.

. . . . 

Each of the parties separately waives any and all rights by dower, homestead, surviving spouse award, inheritance, descent or any other marital right arising by virtue of statute or otherwise in and to any parcel of the estate now owned and possessed by the other . . . .

[¶3] A disclosure statement listing each party’s property and the value of the property was included in the premarital agreement.  Roxann Tweeten listed 640 acres of farmland in McLean County, known as the “L Ranch property,” which she inherited after her first husband’s death in 1987.  She also listed annuities, life insurance proceeds, farm machinery, and cattle.  The agreement stated Roxann Tweeten’s property had a value of $510,000.  Roxann Tweeten testified the L Ranch property had debts totaling over $300,000, which were not disclosed in the agreement.  Harold Tweeten’s disclosure statement listed farm machinery and 720 acres of farmland in McLean County, known as the “Tweeten property,” worth $454,000.  Harold Tweeten testified he owned approximately 5 or 6 acres of the Tweeten property before the premarital agreement was signed, but had an option to purchase the remaining property from his parents for $100,000, which was significantly less than the fair market value.  He testified he did not know whether he told Roxann Tweeten he did not own most of the Tweeten property when they signed the premarital agreement.  Shortly after the parties married, they paid $50,000 for 31 acres of the Tweeten property containing the residence and other buildings, using life insurance proceeds Roxann Tweeten had received following the death of her first husband.  Harold and Roxann Tweeten paid for the rest of the Tweeten property, including most of the farmland, in yearly installments.

[¶4] In 1991, the parties transferred the entire L Ranch and Tweeten properties by warranty deed to themselves, as husband and wife, as joint tenants with the right of survivorship.  Roxann Tweeten testified they transferred the property for financing purposes, and she did not think about whether the transfer had any effect on the premarital agreement.  

[¶5] In 2003, the parties sold the Game and Fish Department a twenty-year easement for the L Ranch property for $160,000 and used the money to pay off some of the debt on that property.  The Tweetens paid off the rest of the debt on the L Ranch property in 2005 using the proceeds from the sale of a portion of the Tweeten property.  

[¶6] In June 2006, Roxann Tweeten filed for divorce.  Harold and Roxann Tweeten stipulated to child custody and visitation, and a partial judgment was entered in May 2007, incorporating their stipulation.  Both parties testified at a June 2008 hearing on property division.  In September 2008, the district court issued an order distributing the parties’ property, and an amended order was entered in October 2008.  The district court awarded Roxann Tweeten the L Ranch property, the 31 acres of Tweeten property containing the residence and other buildings, and half of the remaining Tweeten property.  The court awarded Harold Tweeten the remaining half of the Tweeten property.  Both parties were awarded their personal property, any vehicles in their possession, and the retirement accounts and life insurance in their name.  A judgment was subsequently entered.  

[¶7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  The appeal was timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01. 

II

[¶8] Harold Tweeten argues the district court erred in failing to distribute the parties’ property in accordance with the terms of the premarital agreement and award him the Tweeten property.  He also contends that if the premarital agreement is not enforceable, the court’s property distribution is clearly erroneous because the court did not include the L Ranch property in the marital estate, the property distribution is disproportionate, and the court awarded Roxann Tweeten a portion of the Tweeten property Harold Tweeten purchased before the marriage.  Roxann Tweeten contends the premarital agreement did not apply to the Tweeten property because Harold Tweeten did not have an ownership interest in the property when they signed the premarital agreement, the agreement is unenforceable because Harold Tweeten did not disclose that he only had an option to purchase, and the parties had transferred both the Tweeten and L Ranch properties to each other as joint tenants, voiding the agreement’s protection.  She argues the district court equitably distributed the parties’ marital property, applying the 
Ruff-Fischer
 guidelines.

[¶9] A district court’s decision on the division of martial property is a finding of fact, which may be reversed on appeal only if it is clearly erroneous.  
Kovarik v. Kovarik
, 2009 ND 82, ¶ 8, 765 N.W.2d 511.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, the evidence does not support the finding, or this Court is convinced, on the basis of the entire record, that a mistake has been made.  
Id.

[¶10] When a divorce is granted, the court must equitably distribute the parties’ property and debts.  N.D.C.C. § 14-05-24.  Courts must include all of the parties’ assets and debts in the marital estate, regardless of their source, and apply the 
Ruff-

Fischer
 guidelines to equitably divide the property.  
Kovarik
, 2009 ND 82, ¶ 9, 765 N.W.2d 511; 
Fischer v. Fischer
, 139 N.W.2d 845 (N.D. 1966); 
Ruff v. Ruff
, 78 N.D. 775, 52 N.W.2d 107 (1952).  The 
Ruff-Fischer
 guidelines require the court to consider:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.  The trial court is not required to make specific findings, but it must specify a rationale for its determination.

Hitz v. Hitz
, 2008 ND 58, ¶ 11, 746 N.W.2d 732 (quoting 
Bladow v. Bladow
, 2003 ND 123, ¶ 7, 665 N.W.2d 724).

[¶11] Under N.D.C.C. § 14-03.1-03(1)(c), however, parties to a premarital agreement may contract with respect to the disposition of property upon dissolution of the marriage.  A premarital agreement is a contract, and its interpretation is a question of law, which this Court reviews de novo on the entire record.  
Jangula v. Jangula
, 2005 ND 203, ¶ 9, 706 N.W.2d 85.  Contracts are interpreted in a manner that gives effect to the parties’ intent at the time of contracting.  
Id.
 

[¶12] Here, the premarital agreement provides that Roxann and Harold Tweeten would each retain the title, management, and control of the property they owned prior to the marriage, including all increase or addition to that property, and waive all rights they may have to the other’s property.  The premarital agreement also addressed transfers of property to each other, stating, “[n]othing herein contained shall, in any manner, bar or affect, the right of either party to claim and receive any property of any nature or character that the other party, by last will, or by any other instrument, may give, devise, bequeath, transfer or assign to the other party.”  

[¶13] The district court analyzed the 
Ruff-Fischer
 factors and divided the parties’ property, but did not address whether the premarital agreement is enforceable or why it does not govern the distribution of all of the property listed in the agreement.  The court awarded the L Ranch property to Roxann Tweeten, finding:

This property was owned by Roxann prior to the date of the parties’ marriage.  It was listed in the [premarital agreement] as property that was to belong to Roxann.  Roxann testified that the property was placed in joint tenancy during the marriage for financing purposes and that the parties did not intend to alter the provisions of the [premarital agreement] regarding the distribution of the property.  A substantial portion of the debt against the property was paid by Game and Fish lease which substantially impairs the income producing capability of the property until 2023.  Although payment of the remaining debt against the L Ranch property was made in 2005 from proceeds from the sale of a portion of the Tweeten property, Roxann contributed $50,000 toward the $100,000 purchase price of the Tweeten property in 1991 and also contributed to the upkeep and value of that property during the course of marriage.

The court also awarded Roxann Tweeten the portion of the Tweeten property containing the residence and other buildings.  The court awarded each party half of the remaining Tweeten property to provide each party with land that has equal market value and equal income-producing capacity or rental value.

[¶14] Although Harold Tweeten argued the premarital agreement governed the distribution of the Tweeten and L Ranch properties, the district court included the Tweeten property in the marital estate and used the 
Ruff-Fischer
 guidelines to distribute the property, but awarded Roxann Tweeten the L Ranch property, applying the terms of the premarital agreement.  It is not clear from the court’s decision why it decided the premarital agreement did not govern the distribution of both properties when it ruled the agreement was enforceable as to the L Ranch property. 

[¶15] Harold and Roxann Tweeten, however, transferred the entire L Ranch and Tweeten properties to themselves, as husband and wife, as joint tenants with a right of survivorship in 1991.  The premarital agreement provided that the agreement did not prohibit or affect the right of either party to transfer or assign property to the other party.  Although the district court found the parties did not intend to alter the provisions of the premarital agreement, transferring the properties to themselves as joint tenants was a significant legal act.  
See
 
Jangula
, 2005 ND 203, ¶ 15, 706 N.W.2d 85.  “The law attaches consequences to unambiguous written documents regardless of the parties’ secret intent.”  
Doeden v. Stubstad
, 2008 ND 165, ¶ 17, 755 N.W.2d 859.  
See also
 
In re Estate of Duemeland
, 528 N.W.2d 369, 371 (N.D. 1995) (testator’s possible secret intent was irrelevant and had no effect on the disposition of his estate when his will was unambiguous); 
State ex rel. Sathre v. Moody
, 65 N.D. 340, 258 N.W. 558, 566 (1935).  “Title to joint tenancy property vests immediately in a surviving joint tenant upon the death of the other joint tenant.”  
Jangula
, at ¶ 15.  A joint tenant cannot convey a co-tenant’s interest in property without the co-

tenant’s consent.  
Id.
  The parties no longer had separate ownership of the properties.  To the extent the terms of the premarital agreement were enforceable, the Tweetens’ act of transferring the L Ranch and Tweeten properties to themselves as joint tenants with a right of survivorship destroyed the separate ownership and made the premarital agreement inapplicable. 

[¶16] Because the parties placed the L Ranch and Tweeten properties in joint tenancy ownership after the premarital agreement was signed, we conclude both properties must be included in an equitable division of the marital estate.  “‘[P]arties are entitled to a division of their property under a correct application of the law . . . .’”  
Jangula
, 2005 ND 203, ¶ 16, 706 N.W.2d 85 (quoting 
Brandner v. Brandner
, 2005 ND 111, ¶ 11, 698 N.W.2d 259).  The district court erred in applying the premarital agreement to the L Ranch property, and its decision was induced by an erroneous view of the law.  We remand so the district court may apply the 
Ruff-Fischer
 guidelines and equitably distribute the marital estate, including both the L Ranch and the Tweeten properties.

[¶17] On remand, the court must consider that the L Ranch and Tweeten properties are part of the marital estate and must be included in an equitable distribution.  This Court has said:

Separate property, whether inherited or otherwise, must initially be included in the marital estate and is subject to distribution as may be necessary to achieve an equitable distribution.  Although the premarital acquisition of property can be considered in distributions under the 
Ruff-Fischer
 guidelines, we have never decreed that the property brought into a marriage by a party be irrevocably set aside to that party, . . .

Heley v. Heley
, 506 N.W.2d 715, 718 (N.D. 1993) (quotations and citations omitted).  Roxann Tweeten inherited the L Ranch property after the death of her first husband, and Harold Tweeten received the Tweeten property at a price greatly below market value as a gift from his parents.  Roxann Tweeten helped Harold Tweeten purchase a portion of the Tweeten property, using proceeds from a life insurance policy, and Harold Tweeten sold a portion of the Tweeten property to pay off significant debts on the L Ranch property.  These assets have been commingled throughout the parties’ marriage and no longer have separate identities.  Although use of the L Ranch property is currently limited by the Game and Fish easement, the property is not without value.  Both properties are subject to distribution as may be necessary to achieve an equitable property division, and a substantial disparity in the division of property must be explained.  
Kovarik
, 2009 ND 82, ¶ 9, 765 N.W.2d 511.

III

[¶18] We reverse the judgment, concluding the district court’s property division is clearly erroneous.  We remand for further proceedings consistent with this opinion.

[¶19] Dale V. Sandstrom

Carol Ronning Kapsner

Daniel J. Crothers

I concur in the result.

   Gerald W. VandeWalle, C.J.

Maring, Justice, dissenting.

[¶20] I respectfully dissent.  I would affirm the judgment of the district court.

[¶21] Roxann and Harold Tweeten were married November 3, 1990, and a partial judgment granting the parties’ divorce was entered May 9, 2007.  The final judgment of divorce was entered November 18, 2008.  The parties have four minor children, whose custody was awarded to Roxann Tweeten, and who live in the marital home located on the Tweeten property.

[¶22] In the trial court, Harold Tweeten took the position that the parties’ Antenuptial Agreement should be enforced and govern the distribution of the Tweeten property and the L Ranch property, because he held an option to purchase the Tweeten property and, thus, there was full disclosure.  He took the same position on appeal; however, in the alternative he claimed the trial court’s property distribution was disproportionate as a whole when the value of the L Ranch is considered.

[¶23] In the trial court, Roxann Tweeten took the position that the parties’ Antenuptial Agreement was not enforceable, because Harold Tweeten failed to provide a truthful and accurate disclosure of his assets.  Roxann Tweeten took the same position on appeal.  Both parties agree the trial court did not apply the Antenuptial Agreement’s terms to the Tweeten property in its distribution of the parties’ property.  Harold Tweeten, however, appears to be arguing on appeal that the trial court applied the Antenuptial Agreement’s terms to the L Ranch property.  I disagree based on my reading of the trial court’s 
entire
 Amended Memorandum and Order dated October 2, 2008, the Final Judgment of Divorce, and the remainder of the record of this case.

[¶24] Although the trial court did not use the specific words “I find the Antenuptial Agreement unconscionable,” it did make specific findings which read together indicate this conclusion of law.

[¶25] Our Court has held that one party’s “failure to provide truthful and accurate financial information to [the other party] prior to [the other party] entering the premarital agreement is sufficient ground to render it unenforceable.”  
Peters-Riemers v. Riemers
, 2002 ND 72, ¶ 20, 644 N.W.2d 197; 
see
 N.D.C.C. § 14-03.1-07 (“Not withstanding the other provisions of this chapter, if a court finds that the enforcement of a premarital agreement would be clearly unconscionable, the court may refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable provisions, or limit the application of an unconscionable provision to avoid an unconscionable result.”).  “Even if a premarital agreement has been voluntarily entered, the substantive enforceability of it is a matter of law to be decided by the court.”  
Peters-Riemers
, at ¶ 20.  The district court in the present case found:

In the Antenuptial Agreement, Harold indicated that he owned 720 acres of farmland with buildings.  However, the evidence at trial indicated that one month prior to the marriage, Harold had signed an option to purchase the farmland from his parents and that the farmland was not actually purchased until after the marriage.  His parents sold the property for $100,000, which was less than the fair market value. 

After finding that Harold Tweeten had not been truthful in his disclosure of his assets, the trial court next proceeded to determine the marital estate and to equitably divide it according to the 
Ruff-Fischer
 guidelines and the law.  
Ruff v. Ruff
, 78 N.D. 775, 52 N.W.2d 107 (1952); 
Fischer v. Fischer
, 139 N.W.2d 845 (N.D. 1966).  The court found in its order: 

Based upon the foregoing
, the Court determines that 
the value of the marital property is as agreed to by the parties in the 8.3 Statement
, a copy of which is attached hereto. . . .

Having determined the value of the marital assets
, the Court determines that an equitable division of the parties’ property and debts would be as follows . . . .

(Emphasis added.)  The parties prepared a joint property and debt listing or Rule 8.3, N.D.R.Ct. Statement.  It  includes both the Tweeten land and the L Ranch land.  The trial court, therefore, included both properties in its determination of the total marital estate.  Our Court has held that “[a]ll of the real and personal property accumulated by the parties . . . , regardless of the source must be included in the marital estate to be divided by the trial court.”  
Bladow v. Bladow
, 2003 ND 123, ¶ 6, 665 N.W.2d 724 (citations omitted); 
see
 
Hitz v. Hitz
, 2008 ND 58, ¶ 11, 746 N.W.2d 732.  “We have repeatedly held that separate property, whether inherited or otherwise, must initially be included in the marital estate.”  
Bladow
, at ¶ 6 (citations omitted).  Here, the trial court having decided the Antenuptial Agreement did not control, determined that the marital estate included all the property of the parties whatever the source.

[¶26] We have held that a property distribution need not be equal to be equitable, but a disparity that is substantial must be explained.  
Fox v. Fox
, 1999 ND 68, ¶ 7, 592 N.W.2d 541.  The trial court awarded Roxann Tweeten more of the marital estate than Harold Tweeten.  It awarded her the L Ranch property, which it found:

[W]as listed in the Antenuptial Agreement as property that was to belong to Roxann.  Roxann testified that the property was placed in joint tenancy during the marriage for financing purposes and that the parties did not intend to alter the provisions of the Antenuptial Agreement regarding the distribution of the property.  A substantial portion of the debt against the property was paid by Game and Fish lease which substantially impairs the income producing capability of the property until 2023.  Although payment of the remaining debt against the L Ranch property was made in 2005 from proceeds from the sale of a portion of the Tweeten property, Roxann contributed $50,000 toward the $100,000 purchase price of the Tweeten property in 1991 and also contributed to the upkeep and value of that property during the course of marriage.

The trial court also awarded Roxann Tweeten that portion of the Tweeten property, which includes the farmstead and the marital residence where she and the four minor children live.  The remainder of the Tweeten property was divided equally between Roxann Tweeten and Harold Tweeten.  We have held that the origin of the property is one factor for the court to consider under the 
Ruff-Fischer
 guidelines.  
Bladow
, 2003 ND 123, ¶ 8, 665 N.W.2d 724.  “We have never held that property brought into a marriage or acquired by gift or inheritance by one spouse must be irrevocably set aside to that spouse.”  
Id.
 

[¶27] In the present case, the trial court explained its division of the marital estate.  It found Roxann Tweeten had brought the L Ranch into the marriage as a part of her inheritance following her first husband’s death.  It found that the lease payment of $160,000 from Game and Fish paid off a substantial portion of the debt against the property.  The court noted, however, that the L Ranch property was not profitable, that the twenty-year lease restricts the use of the property until the year 2023, and the income-producing capacity of the property was substantially impaired.  The trial court found that Roxann Tweeten contributed $50,000 of her premarital property toward the $100,000 purchase price of the Tweeten property and also contributed to the upkeep and value of that property during the course of the marriage.  The record establishes that the second contract for deed on the Tweeten property was paid off during the marriage.  The trial court noted that an equal division of the Tweeten property would result in each party receiving equal income-producing capacity or rental value.  The court found both parties were currently employed in manual labor type positions and not likely to earn much more; that Roxann Tweeten was living with the parties’ four children in the parties’ rural marital home and Harold Tweeten was living in a used mobile home.  The trial court found Harold Tweeten had admitted to infidelity during the marriage, which led up to the breakup of the marriage.  This Court has long recognized that both economic and non-

economic fault are factors the trial court may consider in dividing marital property.  
Hoverson v. Hoverson
, 2001 ND 124, ¶ 17, 629 N.W.2d 573.  The trial court concluded no monthly amount of spousal support would be awarded stating: “The Court awarded Roxann a greater share of the marital assets in the property distribution in lieu of a separate award of spousal support.”  We have held that questions of property division and spousal support should be examined and dealt with together.  
Marschner v. Marschner
, 2001 ND 4, ¶ 13, 621 N.W.2d 339.  The evidence in the record supports the trial court’s findings, and the findings support its conclusions of law.  The trial court did not err in concluding that the Antenuptial Agreement was not enforceable, and the trial court did not err in its equitable division of the parties’ marital estate.

[¶28] I would affirm the final judgment of divorce.

[¶29] Mary Muehlen Maring